ST. ELIZABETH HOSPITAL, INC., a Wisconsin corporation, Plaintiff-Respondent,

v.

CITY OF APPLETON, a municipal corporation, et al., Defendant-Appellant.

Court of Appeals

*No. 87–0835. Submitted on briefs August 19, 1987.—Decided October 6, 1987.*

(Also reported in 416 N.W.2d 621.)

For the defendant-appellant there was a brief by *David G. Geenen,* of Appleton.

For the plaintiff-respondent there was a brief by *Robert E. Koenig* of *von Briesen & Purtell, S.C.,* of Milwaukee.

For the Wisconsin Hospital Association, there was an amicus curiae brief by *Mari E. Nahn,* general counsel, Wisconsin Hospital Association of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.  The City of Appleton appeals a judgment that exempted St. Elizabeth Hospital's "First Care" unit from real and personal property taxes under sec. 70.11(4m), Stats. We conclude that this immediate care service is used exclusively for the purpose of the hospital within the meaning of the statute, and affirm the judgment.

The parties filed with the trial court an agreed upon "statement of facts," supplemented by certain

exhibits and deposition testimony. From this evidence, the relevant facts may be summarized as follows:

St. Elizabeth Hospital provides walk-in medical care services in its emergency room facility under the licensed trade name "First Care." According to hospital policy, patients coming into the emergency room facility are initially evaluated by a registered nurse and classified according to the urgency of their injury or illness. Based on severity, the patient is directed to either the emergency, outpatient, or "First Care" area of the emergency room facility. The hospital defines this procedure as "triage." An objective of triage is to recognize acute, life-threatening conditions, and screen non-critical patients in order to better facilitate care of the sick or injured.

"First Care" classifications are utilized daily from 8 a.m. to 10 p.m. All patients presenting themselves outside of the hours of operation are not triaged but, rather, treated as regular emergency room patients regardless of the nature of their illness or injury.

A portion of the waiting area in the emergency room facility, as well as several patient examining rooms, are designated for "First Care" services. The "First Care" waiting room is separate and distinct from the emergency area waiting room.

Medical records for patients receiving "First Care" services are maintained on a consolidated medical record form that is used for all patients treated in the emergency room facility regardless of the type of services rendered. "First Care" and emergency services are provided by the same physicians, nurses, receptionists, and medical technicians. All non-physician staff of the facility are direct employees of the hospital. The physicians have contractual arrangements that essentially establish their status as

independent contractors. This arrangement is in deference to the physicians' traditional autonomy and responsibility for patient diagnosis and treatment.

All "First Care" expenses are allocated to the emergency room cost center. Billing statements for "First Care" and the other services are issued in the name of the hospital. All income from those services is treated as hospital income. The hospital advertises "First Care" service as a walk-in medical clinic service with no appointment necessary. The service is listed in the yellow pages of the telephone directory under the headings "Clinics," "Hospitals," and "Physicians and Surgeons."

The tax assessor for the City of Appleton determined that the "First Care" portion of the emergency room facility was taxable and assessed the property for real estate tax purposes. The assessor also estimated an assessed value for personal property devoted to "First Care." The city issued tax bills accordingly, which St. Elizabeth Hospital paid under protest. It then commenced an action for recovery of unlawful taxes paid under protest, pursuant to sec. 74.73(4), Stats. The trial court held the property exempt from taxes, and the city appeals.

The city first argues that the tax exempt status of the "First Care" unit is unsustainable because it is not "property used exclusively for the purposes of any hospital" as required by sec. 70.11(4m). It insists that the "First Care" unit is separate and distinct from the hospital's emergency room and is "an adjunct to the private practice of a group of doctors."

The construction of a tax exemption statute under a particular set of facts is a question of law that we decide without deference to the trial court's legal

interpretation. *Wisconsin Evangelical Lutheran Synod v. City of Prairie du Chien*, 125 Wis. 2d 541, 549, 373 N.W.2d 78, 82 (Ct. App. 1985). However, the burden of showing that property is exempt is on the party seeking the exemption, and doubts are to be resolved in favor of taxability. *First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). Under this analysis, we conduct a "strict but reasonable" interpretation of the statute. *Id.* at 209, 260 N.W.2d at 253.

With these principles in mind, we first look to the statutory language itself. Section 70.11(4m) provides:

**70.11 Property exempted from taxation.**

. . . .

(4m) **Nonprofit Hospitals.** (a) Real property owned and used and personal property *used exclusively for the purposes of any hospital* of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled, which hospital is owned and operated by a corporation, voluntary association, foundation or trust, no part of the net earnings of which inures to the benefit of any shareholder, member, director or officer, and which hospital is not operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or group of doctors. *This exemption does not apply to property used for commercial purposes or as a doctor's office.* The exemption for residential property shall be limited to dormitories of 12 or more units which house student nurses enrolled in a state accredited school of nursing affiliated with the hospital. (Emphasis supplied.)

The initial question in this case is whether "First Care" is used exclusively for the purposes of the

hospital. These statutory terms were thoroughly analyzed in *Columbia Hosp. Ass'n v. City of Milwaukee,* 35 Wis. 2d 660, 151 N.W.2d 750 (1967). Using the strict but reasonable rule of construction to determine the exclusiveness of the use of the property, the court there adopted the test of "reasonable necessity to the efficient functioning of the hospital." *Id.* at 671, 151 N.W.2d at 755. Under this test, if the general use of the property is for a hospital purpose and the particular use is reasonably necessary, then the facility is held to be exclusively used for hospital purposes although there may be an incidental benefit to others. *Id.* at 670, 151 N.W.2d at 755.

The *Columbia* court also made clear that the language of the statute referring to property used exclusively for the purpose of the hospital means "any and all purposes." *Id.* at 668, 151 N.W.2d at 753. Furthermore, it is for the hospital management, not the reviewing court, to determine the purpose of the hospital. Whether the means are reasonably necessary to attain those purposes is the question open to our determination. *Id.* at 670, 151 N.W.2d at 754.

We conclude that under the facts of this case, the operation of the "First Care" unit at issue is a reasonably necessary function of St. Elizabeth Hospital. The "First Care" service is a direct function of the hospital's broad purpose of diagnosing and treating the sick or injured. By means of the "triage" classification, patients who need urgent care are treated immediately. Additionally, persons presenting less minor injuries are also seen by a physician more quickly and at less expense. In this manner, care is delivered to all patients more efficiently, avoiding the traditional delays in emergency room services.

Furthermore, care may also be delivered to a larger segment of the population. Certain persons, for whatever reason, do not establish a continuing relationship with a physician. Providing episodic services to these patients in a clinic-type environment also furthers the hospital's fundamental purpose.

The city next argues that "First Care" services constitute "a use usually associated with a doctor's office," and thus the provisions of sec. 70.11(4m) are inapplicable. It suggests that *Columbia* requires that the use of the property be essential to the functions of the hospital. This argument misstates the rule. The test is not whether a use of property is most often associated with a hospital or is essential to its functioning. Rather, the test is merely whether the use is reasonably necessary to the hospital's efficient operation.

We acknowledge that the provisions of sec. 70.11(4m) do not apply to property used as a doctor's office. However, the overwhelming facts of this case critically undercut the city's conclusion. Physicians neither own nor lease the "First Care" facility or equipment. Physicians, pursuant to their contractual agreement, do not receive variable compensation related to the scope or extent of their services. Physicians do not employ or supervise non-physician staff.[1] Furthermore, billing statements are issued by the hospital.

Finally, the city argues that the "First Care" unit is "separate and distinct" from the emergency room

---

[1]One physician who is also designated by the hospital as the medical director of the emergency/"First Care" department of the hospital is responsible for direction and oversight of medical services provided.

services and is thus not a function of the hospital. We disagree for two reasons. First, the trial court found as a matter of fact that the "First Care" unit was integrated both physically and administratively into the hospital's emergency room. This finding is not clearly erroneous. *See* sec. 805.17(2), Stats. Second, it is not necessary for exemption purposes that the "First Care" unit be integrated into the hospital's emergency room. It is the reasonable necessity of the facility, not its proximity to the hospital, that is essential. *Columbia,* 35 Wis. 2d at 673, 151 N.W.2d at 756.

Accordingly, we conclude that providing an immediate care service is a valuable and reasonably necessary function of St. Elizabeth Hospital. "First Care" under the facts of this case is used exclusively for hospital purposes and is thereby entitled to exemption from real and personal property taxes.

*By the Court.*—Judgment affirmed.