ST. CLARE HOSPITAL OF MONROE, WISCONSIN, INC., Plaintiff-Appellant,

v.

CITY OF MONROE, Defendant-Respondent.

Court of Appeals

*No. 96–0732. Oral argument December 12, 1996.—Decided March 6, 1997.*

(Also reported in 563 N.W.2d 170.)

For the plaintiff-appellant the cause was submitted on the briefs of *Timothy C. Frautschi* of *Foley & Lardner* of Milwaukee and orally argued by *Timothy C. Frautschi.*

For the defendant-respondent the cause was submitted on the brief of *Robert Horowitz* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison and *Rex A. Ewald* of *Ewald Law Offices, S.C.* and orally argued by *Robert Horowitz.*

<br><br>

For Wisconsin Health and Hospital Association, Inc. an amicus curiae brief was submitted by *Timothy A. Hartin* of *Wisconsin Health and Hospital Association* of Madison.

Before Eich, C.J., Dykman, P.J., and Roggensack, J.

DYKMAN, P.J. St. Clare Hospital of Monroe, Wisconsin, Inc. (St. Clare) appeals from a judgment declaring that its new clinic building is not exempt from 1993 property taxes and dismissing its action against the City of Monroe to recover property taxes paid under protest. St. Clare argues that the property on which the tax was assessed was exempt from taxation under § 70.11(4m)(a), STATS. We conclude that the property was "used as a doctor's office," and as such was not exempt. We therefore affirm.

## BACKGROUND

The facts are not in dispute. St. Clare is a nonprofit corporation that operates a 174-bed hospital in Monroe, Wisconsin. In 1992, St. Clare purchased the assets of Monroe Clinic, S.C., and employed all doctors of the clinic who wanted to be employed by St. Clare. Although the doctors continued to practice medicine in the old clinic building, the asset purchase agreement provided that St. Clare would construct a new "medical office building on or near [St. Clare's] current campus." The new building was completed in 1993.

The new clinic is a free-standing building connected to the hospital by a skywalk. The clinic is open Monday through Friday from 8 a.m. to about 6 p.m., and most patients are seen by appointment. The clinic has its own reception area and, except for pediatri-

cians, each doctor practicing in the clinic has an office in the building. In addition to offices, the clinic building has examination, procedure, and waiting rooms as well as various clinical departments, a general business office, administrative offices, a pharmacy, an optical store, laboratories, a medical imaging area, medical records storage, meeting rooms, and utility space.

The degree of integration between the hospital building and clinic building varies depending on the task. Both the hospital building and clinic building are operated under the name "The Monroe Clinic." One administrator is responsible for both sets of patient records, but the records for the hospital and clinic are kept separate. All bills are sent under the name of "The Monroe Clinic," but the hospital's and clinic's billings are each handled by a separate software system.

With one exception, each physician at the clinic works under a one-year employment contract. Each contract provides for a base salary plus additional compensation if the doctor's productivity reaches a certain level or if the doctor oversees a physician's assistant, certified nurse practitioner or midwife.

On January 31, 1994, St. Clare filed a claim with the City of Monroe for the refund of $72,609.92 in property taxes it had paid on the clinic building in 1993. Monroe denied the claim, and St. Clare commenced this action under § 74.35(3)(d), STATS. After trial, the circuit court concluded that the clinic building was "used as a doctor's office," and thus was not exempt from taxation under § 70.11(4m)(a), STATS. St. Clare appeals.

## DISCUSSION

St. Clare argues that the clinic is exempt from taxation under § 70.11(4m)(a), STATS., 1993-94.[1] This section exempts from general property taxes:

(4m) NONPROFIT HOSPITALS. (a) Real property owned and used and personal property used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled, which hospital is owned and operated by a corporation, voluntary association, foundation or trust, no part of the net earnings of which inures to the benefit of any shareholder, member, director or officer, and which hospital is not operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or group of doctors. *This exemption does not apply to property used for commercial purposes or as a doctor's office.*

(Emphasis added.) Both parties concede that the clinic is used exclusively for the purpose of a hospital, and therefore we will not address that issue. They disagree, however, as to whether the property is "used as a doctor's office" so as to be removed from the exemption.

Monroe argues that the question of whether the clinic is "used as a doctor's office" is a question of fact which should be reviewed under the clearly erroneous standard. However, we agree with St. Clare that construction of the term "used as a doctor's office" is a matter of statutory interpretation, which we review *de novo*. *See L & W Constr. Co. v. DOR*, 149 Wis. 2d 684, 688, 439 N.W.2d 619, 620 (Ct. App. 1989). Whether the

---

[1] This section was amended by 1995 Wis. Act 27. The amendment is not relevant to our discussion.

undisputed facts as found by the trial court satisfy this statutory standard is also a question of law that we review without deference to the lower court. *Id.* at 688-89, 439 N.W.2d at 620.

In *Kickers of Wisconsin, Inc. v. City of Milwaukee*, 197 Wis. 2d 675, 679-80, 541 N.W.2d 193, 195 (Ct. App. 1995), we discussed how we construe tax exemption statutes:

> Taxation is the rule and exemption from taxation is the exception. Tax exemption statutes are matters of legislative grace and are to be strictly construed against the granting of an exemption. A strict construction does not mean the narrowest possible reading, however. Rather, the statute should be construed in a "strict but reasonable" manner. The party claiming the exemption must show the property is clearly within the terms of the exception and any doubts are resolved in favor of taxability.

(Citation omitted.) Moreover, any interpretation of § 70.11(4m), STATS., "must take into account its clear legislative purpose, namely, to provide a benefit to non-profit hospitals engaged in the care of the sick." *Sisters of St. Mary v. City of Madison*, 89 Wis. 2d 372, 380, 278 N.W.2d 814, 817 (1979).

St. Clare bases its argument that the property is exempt primarily on *St. Elizabeth Hosp., Inc. v. City of Appleton*, 141 Wis. 2d 787, 416 N.W.2d 620 (Ct. App. 1987), the only Wisconsin case to discuss the "used as a doctor's office" language of § 70.11(4m), STATS. In *St. Elizabeth*, the hospital provided walk-in medical services in its emergency room facility under the name of "First Care." *Id.* at 789, 416 N.W.2d at 621. Patients coming into the emergency room were evaluated by a nurse and directed to either the emergency, outpatient,

or "First Care" area of the emergency room facility, depending on the urgency of their injury or illness. *Id.* An objective of this procedure was "to recognize acute, life-threatening conditions, and screen non-critical patients in order to better facilitate care of the sick or injured." *Id.*

The City of Appleton assessed property taxes on the "First Care" portion of the emergency room facility. *Id.* at 790, 416 N.W.2d at 621. St. Elizabeth paid the taxes under protest and commenced an action for their recovery. *Id.* On appeal, we concluded that the "First Care" unit was not "used as a doctor's office" within the meaning of § 70.11(4m)(a), STATS. We reasoned:

> We acknowledge that the provisions of sec. 70.11(4m) do not apply to property used as a doctor's office. However, the overwhelming facts of this case critically undercut the city's conclusion. Physicians neither own nor lease the "First Care" facility or equipment. Physicians, pursuant to their contractual agreement, do not receive variable compensation related to the scope or extent of their services. Physicians do not employ or supervise non-physician staff. Furthermore, billing statements are issued by the hospital.

*Id.* at 793, 416 N.W.2d at 623 (footnote omitted).

St. Clare argues that the factors found relevant by the *St. Elizabeth* court are also present in this case, and therefore the clinic should be exempt from taxation. Specifically, St. Clare argues that, like St. Elizabeth, its doctors neither own nor lease the clinic building, its doctors do not have any interest in the profits or losses of the clinic, its doctors do not employ or supervise non-physician staff, and the clinic's billing statements are issued in the trade name of "The Monroe Clinic," which is used for all hospital purposes.

We do not believe that *St. Elizabeth* is controlling for two reasons. First, St. Clare overstates the similarities between this case and *St. Elizabeth*. Unlike *St. Elizabeth*, the clinic physicians receive variable compensation related to the extent of their services, i.e., their productivity. In addition, the standard form employment contract used by St. Clare belies its claim that the doctors do not supervise non-physician staff. The employment agreement specifically provides that a physician who oversees a physician's assistant, certified nurse practitioner or midwife receives extra compensation. And although billing statements are issued in the name of "The Monroe Clinic," the bills of the hospital and clinic are generated by two separate software systems.

Second, we reject St. Clare's attempt to characterize the factors set forth in *St. Elizabeth* as determinative of whether property is "used as a doctor's office" for tax exemption purposes. The *St. Elizabeth* court was simply showing how under the facts of that case, the "First Care" unit was not used as a doctor's office. We did not imply that satisfaction of the four factors listed would conclusively establish that property was not used as a doctor's office, nor did we imply that the absence of any or all of these factors would establish that property was used as a doctor's office.

As health care delivery systems are integrated and medical technology advances, some services that traditionally were provided in a doctor's office will be provided in a hospital setting, and other services that traditionally were provided in a hospital will be provided at a doctor's office. As the line of distinction between the traditional hospital and traditional doctor's office blurs, it becomes increasingly difficult to

371

define "property used as a doctor's office." Therefore, although the factors set forth in *St. Elizabeth* are helpful, the determination of whether property is used as a doctor's office ultimately turns on the facts of each case.

One factor mentioned in *St. Elizabeth* that is present here is that the doctors neither own nor lease the building or equipment. In addition, St. Clare's expert witness testified that in medical parlance, the term "doctor's office" basically denotes a situation in which the doctors own the medical practice and operate it for profit. Because the clinic doctors owned neither the medical practice nor the building, St. Clare argues that the building is not used as a doctor's office for purposes of the statute.

We have already noted that the factors mentioned in *St. Elizabeth* are helpful, but not determinative. We agree that the physicians' lack of ownership of the medical practice is a distinguishing characteristic between the clinic and a "doctor's office" in the traditional sense. The lack of ownership does not, however, in and of itself remove the clinic from being defined as a doctor's office.

We also do not accept St. Clare's definition of "doctor's office." In interpreting Wisconsin statutes, "All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning." Section 990.01(1), STATS. "Doctor's office" is not a technical phrase that has a peculiar meaning in the law. Therefore, we will define it not in terms of medical parlance, but according to its common usage.

In terms of common usage, "doctor's office" is not used solely to describe a building dedicated to the pri-

vate practice of medicine. When visiting the "doctor's office," a patient has no reason to know whether the medical practice is a for profit practice owned by the physicians or part of a nonprofit corporation. Rather, whether a building is "used as a doctor's office" depends on the nature of services provided and the manner in which these services are delivered to the patient.

■

By definition, a "doctor's office" is the building where doctors have their offices. Except for pediatricians, each doctor practicing in the clinic had an office in the building. Also, doctor's offices traditionally provide care on an outpatient basis, while hospitals offer inpatient, overnight care.[2] The clinic building does not have inpatient facilities, while the hospital has 174 beds. Finally, doctor's offices generally have scheduled business hours and see most patients by appointment, while hospitals offer emergency room care on a twenty-four hour basis.[3] The clinic is open Monday through Friday during regular business hours and its physicians see most patients by appointment. Considering these three factors, we conclude that the clinic building

---

[2] This characteristic of hospitals is specifically stated in § 70.11(4m)(a), STATS., which provides that the tax exemption applies only to "any hospital *of 10 beds or more* devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled." (Emphasis added.)

[3] Several Wisconsin cases mention hospital emergency rooms. *See, e.g., Milwaukee County v. LIRC*, 205 Wis. 2d 253, 255, 556 N.W.2d 340, 342 (Ct. App. 1996); *Sherry v. Salvo*, 205 Wis. 2d 14, 18, 555 N.W.2d 402, 403 (Ct. App. 1996); *Bittner v. American Honda Motor Co.*, 194 Wis. 2d 122, 134, 533 N.W.2d 476, 481 (1995); *Swatek v. County of Dane*, 192 Wis. 2d 47, 63, 531 N.W.2d 45, 51 (1995).

is "used as a doctor's office," and as such is not exempt from taxation under § 70.11(4m)(a), STATS.

St. Clare attempts to establish that the clinic is not a doctor's office by construing together the definition of "hospital" contained in the "Hospital Regulation and Approval Act," § 50.33(2), STATS.,[4] and the definition of "physician's office" contained in the "Clean Indoor Air Act," § 101.123(1)(dg), STATS.[5] We reject this argument for two reasons. First, we do not see a correlation between the policy reasons behind promoting safe and adequate hospital care,[6] regulating air quality in public buildings, and exempting from taxation certain nonprofit hospitals. Therefore, the definitions contained in the "Hospital and Regulation Approval Act"

---

[4] Section 50.33(2), STATS., provides:

(a) "Hospital" means any building, structure, institution or place devoted primarily to the maintenance and operation of facilities for the diagnosis, treatment of and medical or surgical care for 3 or more nonrelated individuals hereinafter designated patients, suffering from illness, disease, injury or disability, whether physical or mental, and including pregnancy and regularly making available at least clinical laboratory services, and diagnostic X-ray services and treatment facilities for surgery, or obstetrical care, or other definitive medical treatment.

(b) "Hospital" may include, but not in limitation thereof by enumeration, related facilities such as outpatient facilities, nurses', interns' and residents' quarters, training facilities and central service facilities operated in connection with hospitals.

[5] Section 101.123(1)(dg), STATS., provides that "physician's office" means "a place, other than a residence or a hospital, that is used primarily to provide medical care and treatment."

[6] Section 50.34, STATS., provides:

The purpose of ss. 50.32 to 50.39 is to provide for the development, establishment and enforcement of rules and standards for the construction, maintenance and operation of hospitals which, in the light of advancing knowledge, will promote safe and adequate care and treatment of patients in such hospitals.

and "Clean Indoor Air Act" are not helpful in determining whether the clinic is "used as a doctor's office" for purposes of the property tax exemption. Second, where the legislature has intended "hospital" to be defined as provided in § 50.33(2), STATS., it has stated so. *See, e.g.*, §§ 48.20(4), 69.01(13), 77.54(14r), 150.01(12), and 231.01(5m), STATS. Because § 70.11(4m)(a), STATS., does not provide that "hospital" has the meaning provided by § 50.33(2), STATS., we are not bound by that statutory definition.

St. Clare also argues that the clinic is not used as a doctor's office because it is integrated with the hospital physically and operationally. St. Clare mentions that the hospital and clinic share some equipment and facilities, as the clinic does not have some diagnostic equipment and contains meeting rooms for hospital-wide administrative meetings, community health programs and use by local nonprofit organizations. We agree that the clinic possesses some features that distinguish it from the traditional doctor's office. But the fact that St. Clare has taken advantage of economies of scale by providing for the joint use of some equipment and facilities does not change the fundamental use of the building from that of a doctor's office to something else.

We acknowledge that competitive pressures lead health care providers to consolidate and integrate their services.[7] However, if the property tax exemption were

---

[7] *See Chisago Health Servs. v. Commissioner of Revenue*, 462 N.W.2d 386, 392-93 (Minn. 1990) (Yetka, J., dissenting). In *Chisago Health Services*, the majority concluded that an outpatient clinic owned by a hospital was not tax exempt because it was not "reasonably necessary" to the hospital's operation. Justice Yetka dissented, reasoning:

extended to clinics owned and operated by nonprofit hospitals, similar privately-operated facilities would be put at a competitive disadvantage. *See Chisago Health Servs. v. Commissioner of Revenue*, 462 N.W.2d 386, 391 (Minn. 1990). The question of whether to extend the § 70.11(4m)(a), STATS., exemption to outpatient clinics owned and operated by nonprofit hospitals is a public policy question for the legislature, not us, to decide. We are not to extend property tax exemptions by implication. *Janesville Community Day Care Ctr., Inc. v. Spoden*, 126 Wis. 2d 231, 233, 376 N.W.2d 78, 80 (Ct. App. 1985). Following a "strict but reasonable" construction of the statute, we conclude that the clinic building is not exempt from property taxation.

*By the Court.*—Judgment affirmed.

The health care system in America has undergone dramatic change within the past decade. Medicare and Medicaid have systematically reduced their payments to hospitals for patient services. Third-party payors—HMO's and private insurers—have imposed restrictions on reimbursement. As a result, hospital revenues have dropped drastically. In order to survive, hospitals have had to look for alternative, more cost-effective ways to provide patient service. Many have set up outpatient and ambulatory care facilities, often in shopping malls and neighborhood centers remote from the hospital inpatient unit.

. . . .

The form of providing hospital services is changing. Today many hospitals have only a 10 or 20 percent occupancy rate compared to 30 years ago when 90 to 100 percent of inpatient beds were filled. Today Medicare, Medicaid, and private insurers demand that patient care be delivered in a more cost-effective way, that is, on an outpatient basis. Today hospitals derive their revenues more from short-term patients and those who receive ambulatory care than from long-term inpatients. It is reasonable for the hospital to enlarge its outpatient service and to provide care in remote locations which are more accessible to walk-in patients.