COVENANT HEALTHCARE SYSTEM, INC.,
Plaintiff-Respondent,†

v.

CITY OF WAUWATOSA, Defendant-Appellant.

Court of Appeals

*Nos. 2009AP1469, 2009AP1470.*
*Submitted on briefs May 7, 2010.—Decided August 10, 2010.*

2010 WI App 125

(Also reported in 791 N.W.2d 205.)

† Petition for Review granted 12-7-10.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. The City of Wauwatosa appeals a trial court order and judgment, entered after the trial court found St. Joseph Outpatient Center ("the Clinic") to be a tax-exempt property under Wis. Stat. § 70.11(4m)(a) (2007–08).[1] The trial court entered the order and judgment following a nine-day bench trial, consolidating Milwaukee County Circuit Court Case Nos. 2004CV6458 and 2006CV5558. The City appeals with respect to both cases, and the parties stipulated to consolidation of the cases on appeal.

¶ 2. The City challenges the trial court's conclusion that the Clinic is a tax-exempt property under Wis. Stat. § 70.11(4m)(a). More specifically, it argues that the trial court erred in determining that Covenant Healthcare System, Inc. demonstrated that: (1) the Clinic is used for the purposes of any hospital; (2) the net earnings of the Clinic do not inure to the benefit of Covenant; (3) the Clinic is not used for commercial purposes; and (4) the Clinic is not a doctor's office. Because we hold that the Clinic is a doctor's office pursuant to § 70.11(4m)(a), excluding it from property tax exemption, we need not address the City's other claims. Accordingly, we reverse and remand for entry of judgment in favor of the City.

[1] We appreciate the amicus curiae briefs submitted by the Wisconsin Association of Assessing Officers, the League of Wisconsin Municipalities, and the Wisconsin Hospital Association.

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

BACKGROUND[2]

¶ 3. The Clinic is a freestanding outpatient medical facility located in the City of Wauwatosa. From 2003 through 2006, the tax years in dispute, the Clinic was owned and operated by St. Joseph Hospital Regional Medical Center, Inc. ("St. Joseph"), a Wisconsin nonprofit corporation. St. Joseph's sole member was Covenant, an Illinois nonprofit corporation.[3]

¶ 4. The building in which the Clinic is located was originally owned by Covenant. Covenant built the five-story building for the Clinic and then transferred the building to St. Joseph by accounting entries. However, Covenant continued to own the land on which the building sat, leasing it to St. Joseph. The Clinic was located on the first, third, and fourth floors of the building. St. Joseph leased the space on the second floor to an affiliated corporation, Covenant Medical Group, Inc., and leased the space on the fifth floor to unrelated physicians and health professionals. Covenant does not seek tax exemptions for the second and fifth floors.

¶ 5. The building contained public space on each of its five floors and the lower level, including lobbies, hallways, restrooms, staircases, and an elevator. The property also included a separate parking structure and surface parking areas.

---

[2] Our recitation of the facts is based upon the thoughtful and detailed findings set forth by the trial court in its written order following the trial. The parties do not appear to object to the trial court's factual findings.

[3] The term "member" appears in WIS. STAT. § 70.11(4m)(a): "which hospital is owned and operated by a corporation, . . . no part of the net earnings of which inures to the benefit of any shareholder, *member*, director or officer." (Emphasis added.)

¶ 6. St. Joseph also owned and operated an inpatient hospital about five miles away from the Clinic, on Chambers Street in downtown Milwaukee ("Chambers Street Hospital"). The parties agree that the Chambers Street Hospital is a tax-exempt property under WIS. STAT. § 70.11(4m)(a).

¶ 7. The Clinic does not provide inpatient care. Outpatient services provided by the Clinic include: cardio/pulmonary services, continence and pelvic floor services, laboratory services, outpatient surgery, pain management services, and wound care. The Clinic also includes pediatric rehabilitation, physical therapy, radiology, a sleep disorders center, and a women's health care center. Patients typically need to set up appointments during scheduled business hours to utilize these services. Physicians at the Clinic are provided cubicles in which to complete paperwork and make phone calls.

¶ 8. The Clinic also includes a twenty-four-hour Urgent Care service, occupying less than ten percent of the Clinic's space. There are six levels of emergency room care. The Urgent Care treats patients at all levels of emergency room care, but with more patients at level one than level six. Patients with more serious conditions (levels four through six) are stabilized and then transferred to an emergency unit or admitted to inpatient status at a hospital. The Urgent Care's surgery center may not treat patients whose estimated recovery time is over four hours. The most common conditions treated at the Urgent Care are broken bones, injuries that require sutures, sprains and strains, accidents and falls, asthma, allergy attacks, eye injuries, rashes, minor burns, colds, and flu.

¶ 9. In 2003, 2004, 2005, and 2006, Covenant filed timely Property Tax Exemption Requests with the City of Wauwatosa Assessor, seeking property tax exemp-

tions for the Clinic and the land on which it is located. On each occasion, the City Assessor denied the request. Accordingly, Covenant paid the taxes assessed on the property for each given year.

¶ 10. Covenant filed suit against the City, pursuant to Wis. Stat. § 74.35(3)(d), in an attempt to recover the taxes it paid between 2003 and 2006. A nine-day bench trial was held from August 14 until August 17, 2007, and from January 28 until February 1, 2008. On March 30, 2009, the trial court issued a written order, setting forth in detail its findings of fact and concluding that the Clinic was property tax exempt under Wis. Stat. § 70.11(4m)(a). The City appeals, arguing (among other things) that the Clinic is a doctor's office and therefore is not qualified for a tax exemption under the statute.

## Standard Of Review

¶ 11. "[C]onstruction of the term 'used as a doctor's office' is a matter of statutory interpretation, which we review *de novo.*" *St. Clare Hosp. of Monroe, Wis., Inc. v. City of Monroe*, 209 Wis. 2d 364, 368, 563 N.W.2d 170 (Ct. App. 1997). Whether the facts found by the trial court satisfy this statutory standard is also a question of law that we review without deference to the trial court. *Id.* at 368–69.

¶ 12. We construe tax exemption statutes as follows:

> "Taxation is the rule and exemption from taxation is the exception. Tax exemption statutes are matters of legislative grace and are to be strictly construed against the granting of an exemption. A strict construction

does not mean the narrowest possible reading, however. Rather, the statute should be construed in a "strict but reasonable" manner. The party claiming the exemption must show the property is clearly within the terms of the exception and any doubts are resolved in favor of taxability."

*Id.* at 369 (citation omitted). "Moreover, any interpretation of [WIS. STAT.] § 70.11(4m) . . . 'must take into account its clear legislative purpose, namely, to provide a benefit to nonprofit hospitals engaged in the care of the sick.' " *St. Clare*, 209 Wis. 2d at 369 (citation omitted). The burden of proof is on the entity seeking the exemption. WIS. STAT. § 70.109.

### DISCUSSION

■

¶ 13. The trial court concluded that the Clinic is property-tax exempt pursuant to WIS. STAT. § 70.11(4m)(a).[4] Section 70.11(4m)(a) provides a property tax exemption for real property, owned and used exclusively for the purposes of any hospital. In order to qualify, a property must: have ten beds or more devoted primarily to the diagnosis, treatment, or care of

---

[4] WISCONSIN STAT. § 70.11(4m), in relevant part, provides an exemption from property taxes for:

> NONPROFIT HOSPITALS. (a) Real property owned and used and personal property used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled, which hospital is owned and operated by a corporation, . . . no part of the net earnings of which inures to the benefit of any shareholder, member, director or officer, and which hospital is not operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or group of doctors. This exemption does not apply to property used for commercial purposes, as a health and fitness center or as a doctor's office.

the sick, injured, or disabled; be owned and operated by a corporation; not inure any portion of its net earnings to the benefit of any member; and not be operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or a group of doctors. *Id.* Additionally, the statute expressly states that it "does not apply to property used for commercial purposes, as a health and fitness center or as a doctor's office." *Id.* The City challenges all of the trial court's legal conclusions—that the Clinic is used for the purposes of any hospital; that the net earnings of the Clinic do not inure to the benefit of Covenant; that the Clinic is not used for commercial purposes; and that the Clinic is not a doctor's office—but because we conclude that the Clinic is used as a doctor's office within the meaning of § 70.11(4m)(a), we need not address Covenant's other claims.

¶ 14. We reiterate at the outset that our task on review is to construe WIS. STAT. § 70.11(4m)(a) in a way that gives meaning to the legislature's intent. *See St. Clare,* 209 Wis. 2d at 369. The legislative purpose behind § 70.11(4m)(a) is very clear—to encourage *nonprofit hospitals* to provide care for the sick by giving them a tax exemption. *See St. Clare,* 209 Wis. 2d at 369. But equally clear is that WIS. STAT. § 70.109[5] requires that the tax exemption meant for nonprofit hospitals under § 70.11(4m)(a) be strictly but reasonably construed, and that any ambiguity be resolved against exemption. *See St. Clare,* 209 Wis. 2d at 369.

---

[5] WISCONSIN STAT. § 70.109 states:

**Presumption of taxability.** Exemptions under this chapter shall be strictly construed in every instance with a presumption that the property in question is taxable, and the burden of proof is on the person who claims the exemption.

¶ 15. WISCONSIN STAT. § 70.11(4m)(a) prohibits giving a tax exemption to property used as a doctor's office. It makes no specific reference to outpatient clinics or urgent care centers or any of the other similarly named, burgeoning, freestanding clinics so prevalent today. However, we previously determined in *St. Clare* that "whether a building is 'used as a doctor's office' depends on the nature of services provided and the manner in which these services are delivered to the patient." *Id.*, 209 Wis. 2d at 373. We are compelled to follow our precedent and, consequently, apply that test to the undisputed facts here. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶ 16. We noted in *St. Clare* that "the determination of whether property is used as a doctor's office ultimately turns on the facts of each case." *Id.*, 209 Wis. 2d at 372. The medical clinic in *St. Clare* was a freestanding clinic connected to the hospital by a skywalk. *Id.* at 366. Because the clinic in *St. Clare* was physically attached to a hospital it appeared to present a strong argument for tax exemption pursuant to WIS. STAT. § 70.11(4m)(a). Yet, we found in *St. Clare* that the clinic was not entitled to the tax exemption, despite its close proximity to the hospital, because its other features led to the conclusion that it was used as a doctor's office. *Id.*, 209 Wis. 2d at 366–67. The key facts that led us to that conclusion were: (1) the absence of inpatient facilities in the clinic; (2) the presence of doctors' offices in the clinic; and (3) the fact that most patients were seen by appointment, during business hours. *See id.* at 373–74.

¶ 17. Like the medical clinic in *St. Clare*, the Clinic here: (1) did not provide inpatient services; (2) provided the doctors with a space to do paperwork; and (3) saw most patients by appointment, during

business hours. Applying the *St. Clare* test—looking at "the nature of services provided and the manner in which [they] are delivered to the patient"—leads to the same result here; the Clinic is used as a doctor's office. *See id.*, 209 Wis. 2d at 373. As we noted in *St. Clare*, the term " '[d]octor's office' is not a technical phrase that has a peculiar meaning in the law." *Id.* at 372. It is a place where doctors see patients, mostly by appointment, during scheduled business hours, and have their offices. *Id.* at 373. A hospital, on the other hand, is a place that offers "inpatient, overnight care." *Id.*

¶ 18. Covenant argues that the Clinic's twenty-four-hour Urgent Care (which occupies less than ten percent of the Clinic's space) distinguishes the Clinic from the non-tax-exempt clinic in *St. Clare*. We disagree because the types of conditions treated at the Urgent Care and the recovery time for those conditions are comparable to those treated at a doctor's office. The trial court found that "[t]he most common conditions treated at the [Clinic]'s Urgent Care were broken bones, injuries that required sutures, sprains and strains, accidents and falls, asthma, allergy attacks, eye injuries, rashes, minor burns, colds, and flu"—conditions commonly treated in a doctor's office. Further, the trial court found that the surgery center in the Urgent Care "may not treat patients whose estimated recovery time is over four hours" and that while, hypothetically, the Clinic *could* accept ambulances transporting victims with emergency conditions "in the event of a disaster, pandemic or epidemic," the Clinic "typically does not accept ambulances." Such policies are consistent with a doctor's office's emphasis on short-term, routine care. It is undisputed that no inpatient overnight care is provided at the Urgent Care part of the Clinic. We are unconvinced by Covenant's argument that the Urgent

Care offers a level of service not provided by a doctor's office. Rather, we view the Urgent Care as permitting the Clinic to perform its services as a doctor's office on a twenty-four-hour basis.

¶ 19. Covenant argues further that the Clinic provides the doctors with cubicles, not offices, which distinguishes it from the clinic in *St. Clare*. Again, we disagree. First, neither the trial court in *St. Clare* nor the trial court here described the size, wall height, furniture, and facilities of the doctors' work spaces, and, therefore, we cannot draw a conclusion about their relative similarity or lack thereof. Second, the dispositive fact is that the Clinic did provide the doctors with work space in which to dictate notes and make phone calls. The size and grandeur of that space is not dispositive. Moreover, even in *St. Clare*, not all physicians were provided with offices, pediatricians were not, and, yet, we concluded that the medical center there was a doctor's office. *See id.* at 366–67, 373.

¶ 20. In addition, we reject Covenant's arguments that the Clinic is not a doctor's office because: (1) the Clinic's services are provided under St. Joseph's hospital license; (2) the Clinic was constructed to hospital building standards; and (3) the Clinic's services qualify for hospital-based reimbursement through Medicare. We find none of these factors to be persuasive. To begin, these factors do not address "the nature of services provided" by the Clinic or "the manner in which these services are delivered." *See id.* at 373. Some of these facts only demonstrate that the Clinic *could* operate as a hospital if it chose to, not that it actually did during the years in dispute. Further, whether the Clinic qualifies as a hospital or a doctor's office under rules and regulations promulgated outside the tax code is irrel-

403

evant to whether the Clinic qualifies as a doctor's office for purposes of property tax exemption under WIS. STAT. § 70.11(4m)(a).

¶ 21. We also reject Covenant's contention that the billing and recordkeeping system utilized by both the Clinic and the Chambers Street Hospital should affect our decision in this instance. Nothing in the statute or our case law necessarily prohibits a doctor's office from sharing recordkeeping and billing files with a hospital. Nor does the manner in which a facility keeps its records assist us in determining "the nature of services provided and the manner in which these services are delivered to the patient." *See St. Clare*, 209 Wis. 2d at 373.

¶ 22. Finally, we reject Covenant's assertion that the Clinic is similar to the tax-exempt "First Care" area in *St. Elizabeth Hospital, Inc. v. City of Appleton*, 141 Wis. 2d 787, 416 N.W.2d 620 (Ct. App. 1987). The facts in *St. Elizabeth* distinguish it from this case. In *St. Elizabeth* the trial court held that the "First Care" area of a hospital's emergency room was entitled to the WIS. STAT. § 70.11(4m)(a) tax exemption. *St. Elizabeth*, 141 Wis. 2d at 788–89. St. Elizabeth Hospital provided "walk-in medical care services in its emergency room facility under the licensed trade name 'First Care.' " *Id.* at 789. Patients coming into the emergency room were initially evaluated by a registered nurse and then directed either to the emergency, outpatient, or "First Care" area of the emergency room, depending on the urgency of their injury. *Id.*

¶ 23. First, in *St. Elizabeth*, we were construing the applicability of WIS. STAT. § 70.11(4m)(a) to an area *inside* a hospital's emergency room. *See St. Elizabeth*, 141 Wis. 2d at 789. Second, the primary challenge had been to the "exclusive use" language in WIS. STAT.

§ 70.11(4m)(a), which we do not address in this case. *See St. Elizabeth,* 141 Wis. 2d at 791–93. Resolving the "exclusive use" question in the hospital's favor was relatively easy on those facts—we concluded in *St. Elizabeth* that the "First Care" area was significantly integrated with the hospital. *See id.* at 792 (stating that the exclusive use of a property turns on whether the property is " 'reasonabl[y] necess[ary] to the efficient functioning of the hospital' ") (citation omitted).

¶ 24. Next, because we concluded that the "First Care" area was used exclusively for the purposes of the hospital, the City of Appleton asked us to consider, in the alternative, whether the "First Care" area was used as a doctor's office. *Id.* at 793. We concluded that it was not. *Id.* We cited the exclusivity of use, the reasonable necessity to the hospital's efficient functioning, and the "First Care" area's integration within the hospital, as the basis for concluding that the "First Care" area was not a doctor's office. *Id.* at 793–94. But as we stated in *St. Clare,* each case is dependent on its own facts. *Id.,* 209 Wis. 2d at 372. Whether an area within a hospital's emergency room is a doctor's office is a far different question than the status of a clinic five miles away from the hospital, as is presented here.

¶ 25. We, like the Dissent, appreciate and acknowledge the trial court's extensive findings of fact. We are not unmindful of the huge task such thorough findings represent. And, like the Dissent, we note that the findings are undisputed. Where we differ from the Dissent is our judgment as to whether the findings support the trial court's conclusion of law that the Clinic was not used as a doctor's office. We conclude they do not. And we note that most of the facts cited by the Dissent address the other issues in the case—such as whether the Clinic is exclusively used for the pur-

405

poses of the hospital and whether the net earnings of the Clinic inure to the benefit of Covenant—issues that we do not find dispositive.

¶ 26. We also respectfully disagree with the Dissent's reliance on *Columbia Hospital Association v. City of Milwaukee*, 35 Wis. 2d 660, 151 N.W.2d 750 (1967). We note that the issue and holding in that case address a different question of law than is presented here. *Columbia Hospital* was determining whether housing for interns and employees was "used exclusively for the purposes of the hospital," pursuant to Wis. Stat. § 70.11(4m)(a). *Columbia Hosp.*, 35 Wis. 2d at 665–66. In order to make that determination, the court had to consider whether the housing was "reasonabl[y] necess[ary] to the efficient functioning of the hospital," *see id.* at 670–73, which is a question we conclude is unnecessary to address in this case. Here, regardless of "exclusive use," if the building is a doctor's office, under § 70.11(4m)(a), it does not get the tax exemption. For the reasons stated above, we conclude that the Clinic is used as a doctor's office.

¶ 27. We end the discussion where we began, with the legislative purpose of Wis. Stat. § 70.11(4m)(a). If the legislature wants to extend the tax exemption, it can surely do so. As we stated in *St. Clare*: "[a]s the line of distinction between the traditional hospital and traditional doctor's office blurs, it becomes increasingly difficult to define 'property used as a doctor's office.' " *Id.*, 209 Wis. 2d at 371–72. That is certainly the case here. Advances in modern technology have allowed for more integration between medical facilities, overlapping services, and more outpatient care. But when determining the status of the Clinic, by remaining focused on the nature of the services provided and the manner in which they are delivered—including the Clinic's set hours, its

exclusive focus on outpatient care, its standard operating policy to not accept ambulances transporting victims with emergency conditions, and its decision not to treat patients whose recovery time is over four hours—we are able to conclude that the Clinic is used as a doctor's office, albeit a modern one with updated facilities and capabilities. As such, the Clinic does not qualify as a tax-exempt property under § 70.11(4m)(a).

*By the Court.*—Judgment and order reversed and cause remanded.

¶ 28. FINE, J. (*dissenting*). The Majority holds that the St. Joseph Outpatient Center is a "doctor's office" under Wis. Stat. § 70.11(4m)(a), despite extensive findings of fact by the circuit court that ineluctably lead to the contrary conclusion.[1] Accordingly, I respectfully dissent.

¶ 29. As I read the Record and the circuit court's findings of fact, there is no doubt but that the St. Joseph Outpatient Center is what its title says it is—a necessary adjunct to St. Joseph Hospital that supports and enhances the "efficient functioning of the hospital," irrespective of its distance from the hospital. *See Columbia Hospital Ass'n v. City of Milwaukee*, 35 Wis. 2d 660, 671, 673, 151 N.W.2d 750, 755, 756 (1967) (housing for interns) (internal single quotation marks omitted) ("It is the reasonable necessity of the use of the facility, not its proximity to the hospital which is essential."). Indeed, as we see from the circuit court's findings of fact that I set out below, distance from St. Joseph Hospital is a significant *enhancement* of the hospital's core function.

---

[1] Significantly, as the Majority notes, neither it nor the City of Wauwatosa even suggest that any of the circuit court's findings of fact are "clearly erroneous." Majority at ¶ 25 n.2. Those findings are thus binding on us. *See* Wis. State. Rule 805.17(2).

¶ 30. The circuit court found:

- The physicians do not have offices at the St. Joseph Outpatient Center.

- The physicians are not "compensated based on" whether the income of St. Joseph Outpatient Center exceeds its revenues.

- The outpatient care given by St. Joseph Outpatient Center is of the same type given by St. Joseph Hospital (which is concededly tax-exempt) and hospitals generally.

- "Given proper equipment, physical structure and personnel, almost any service that can be provided on an outpatient basis at an on-campus hospital ambulatory setting can also be provided safely in an off-campus site." No one disputes that St. Joseph Outpatient Center is so equipped and staffed.

- Further, "off-campus outpatient services" benefit both: (1) those who seek outpatient treatment generally available on hospital campuses; and (2) the parent hospital because:

 (i) Patients need and prefer facilities that are more accessible to them than the hospital campus.

 (ii) Patients with easier access to "off-campus outpatient facilities . . . are more likely to comply with treatment plans." This "lead[s] to better care" for patients.

 (iii) "Outpatient care typically is less expensive than inpatient care."

 (iv) Outpatient facilities convenient for patients tend to reduce the loss of offsetting business to what the circuit court described as " 'cherry picking' facilities, [so that the hospital would]

be left with primarily" services for which the hospital's costs exceed the money it gets from either reimbursement programs or from private-pay patients, thereby "rendering the hospital unable to fund services that lose money."

- The St. Joseph Outpatient Center replaced an off-campus St. Joseph Hospital facility that provided outpatient services and which was recognized as tax-exempt by Wauwatosa. Indeed, the circuit court found that the business plan that led to the development of the St. Joseph Outpatient Center was needed for the efficient provision of hospital services by St. Joseph Hospital:

 (i) Creation of "an urgent care center similar to an emergency department" would "reduce diversion of ambulances" from St. Joseph Hospital.

 (ii) The proposed St. Joseph Outpatient Center would "relieve parking problems" at St. Joseph Hospital.

 (iii) The proposed St. Joseph Outpatient Center would "[f]ree space for outpatient services at" St. Joseph Hospital.

 (iv) A new facility would provide adjunct hospital services more efficiently than the older St. Joseph Hospital "by locating the departments next to each other (reducing footsteps required of nurses when providing medical services)."

 (v) A new facility would "[f]acilitate recruitment of physicians for this new facility with convenient highway access and parking."

 (vi) A new facility would permit the construction of "hyperbaric chambers [to assist healing], for which St. Joseph lacked space."

- "The [St. Joseph Outpatient Center] was designed and constructed to significantly higher standards than a typical medical office building." Thus, "[t]here were a number of enhancements included in the construction of the [St. Joseph Outpatient Center] that would not be found in a doctor's office."

- As material to the tax years "at issue, the [St. Joseph Outpatient Center] provided outpatient services, some of which are also provided by St. Joseph Hospital," including:

 (i) "Urgent Care 24 hours per day, seven days per week with board-certified emergency department physicians and nurses"—the circuit court found that the St. Joseph Outpatient Center's "Urgent Care was designed like a standard emergency room in an acute care hospital";

 (ii) "Cardio/Pulmonary Services";

 (iii) "Continence and Pelvic Floor Services";

 (iv) "Laboratory Services";

 (v) "Outpatient Surgery";

 (vi) "Pain Management Services";

 (vii) "Pediatric Rehabilitation";

 (viii) "Physical Therapy";

 (ix) "Radiology";

 (x) "Sleep Disorders Center";

 (xi) "Women's Health Care in the Center for Women's Well-Being"—this was in keeping with the St. Joseph Outpatient Center business plan, which the circuit court found was, as material to this subpart, to "[p]rovide medical services that cover the life span of women in one location, for which there was then insufficient space elsewhere";

410

(xii) "Wound Care."

- The St. Joseph Outpatient Center "is integrated" with St. Joseph Hospital:

 (i) "All hospital and outpatient records are accessible at both locations";

 (ii) "Both facilities have the same requirements for credentialing physicians and obtaining privileges to practice";

 (iii) "The same four physician groups providing radiology, anesthesiology, pathology (laboratory), and urgent care operate at both locations";

 (iv) "Both locations share the same billing system";

 (v) "Generally, departments at both locations are led by the same person";

 (vi) "Both facilities operate under the same license";

 (vii) Both facilities have the "[s]ame medical staff bylaws rules and regulations for credentialed physicians";

 (viii) "Administrators at each facility are routinely on call at the other facility";

 (ix) "Both facilities share an online radiology database";

 (x) "Both facilities share an online registration system."

¶ 31. As the Majority recognizes, our law is that "whether property is used as a doctor's office ultimately turns on the facts of each case." *See St. Clare Hospital of Monroe, Wisconsin, Inc. v. City of Monroe*, 209 Wis. 2d 364, 372, 563 N.W.2d 170, 173 (Ct. App. 1997). In *St. Clare*, the hospital bought an existing doctors' practice

411

and built a new building in which, significantly, almost all of the doctors had *an office. Id.*, 209 Wis. 2d at 366–367, 563 N.W.2d at 171. As *St. Clare* opined: "By definition, a 'doctor's office' is the building where doctors have their offices. Except for pediatricians, each doctor practicing in the clinic had an office in the building." *Id.*, 209 Wis. 2d at 373, 563 N.W.2d at 173. This is not the case here. Rather, *none* of the physicians working out of the St. Joseph Outpatient Center have offices there.

¶ 32. The circuit court carefully summarized the evidence presented during the bench trial:

> While St. Joseph was already providing outpatient services in Wauwatosa before construction of the [St. Joseph Outpatient Center], the new facility was not a simple replacement of [the old]. St. Joseph Hospital embarked on the [St. Joseph Outpatient Center] project because of genuine limitations confronting the hospital in the delivery of medical services. The [St. Joseph Hospital] Facility emergency room was frequently overwhelmed. It was used so extensively that the hospital often was forced to divert ambulances to other hospitals. St. Joseph provides medical care for patients without regular health care providers, persons more likely to use the emergency room for ordinary health care. Use of the emergency room exacerbated crowding in the parking garage. Creation of an outpatient clinic or an urgent care center within [St. Joseph Hospital] might have relieved the emergency room, but there was no space within the [St. Joseph Hospital] Facility. The hospital surmised that chronic lack of space within the facility and in the parking garage was related to other problems, such as difficulty in recruiting nurses and physicians.
>
> In going forward with the [St. Joseph Outpatient Center], St. Joseph Hospital sought not only to address

412

space limitations and recruitment challenges, but also to enhance services consonant with those of a modern hospital . . . .

. . . .

The [St. Joseph Outpatient Center], as designed, constructed and operated, addresses limitations and goals that St. Joseph identified. An integrated Urgent Care Center, a Women's Life Center, and hyperbaric chambers are located at the [St. Joseph Outpatient Center]. The [St. Joseph Outpatient Center]'s capabilities include those necessary to the proper functioning of these components (radiology, pharmacy, surgery). Care was taken to integrate the [St. Joseph Outpatient Center] with the [St. Joseph Hospital] Facility. St. Joseph utilizes modern technology to enhance, as seamlessly as presently possible, the delivery of hospital services. Though physically separated, the facilities have integrated patient, registration, and pharmacy records. They share a unified billing system. Patient radiology records are equally available on line. The facilities operate under the same license. They share department heads, physician privileges, and medical staff bylaws. The same physician groups provide services at the two facilities.

. . . In all respects examined at trial, the [St. Joseph Outpatient Center] was designed, built and operated to address concerns, correct deficiencies and enlarge services. Contrary to Wauwatosa's arguments, the [St. Joseph Outpatient Center] is not a doctor's office. [Covenant Health Care System, Inc.] has met its burden of showing that the [St. Joseph Outpatient Center] was reasonably necessary to the efficient functioning of St. Joseph Hospital.

¶ 33. Based on the circuit court's findings of fact, which, as noted, no one disputes, I agree, on our *de novo* review, with its legal conclusion set out in the last two

413

sentences of the above quotation from the circuit court's insightful analysis. Accordingly, I respectfully dissent.[2]

---

[2] As the Majority notes, it is not analyzing the other grounds asserted by Wauwatosa seeking to reverse the circuit court. Accordingly, although I fully agree with the circuit court's cogent analysis of those issues, I too will not address them here.