Bethel Convalescent Home, Inc., Appellant, v. Town of Richfield and another, Respondents.

*October 30—November 28, 1961.*

For the appellant there was a brief by *Brazeau, Brazeau, Potter & Cole* of Wisconsin Rapids, and oral argument by *Richard S. Brazeau.*

For the respondents there was a brief and oral argument by *Morgan L. Midthun* of Wisconsin Rapids.

BROADFOOT, J. The defendants seem to concede the institution operated by the plaintiff is a hospital for the purposes of this case. Therefore we do not make any determination in that respect. The sole issue presented to us is whether or not any part of the net earnings of the plaintiff inures to the benefit of any member.

In construing the provisions of sec. 70.11 (4m), Stats., we do so with a fundamental rule of tax law in mind. That rule, as stated in *Madison Aerie No. 623 F. O. E. v. Madison* (1957), 275 Wis. 472, 476, 82 N. W. (2d) 207, is as follows:

"Statutes exempting property from taxation are to be strictly construed and all doubts are resolved in favor of its taxability. To be entitled to tax exemption the taxpayer must bring himself within the exact terms of the exemption statute."

The plaintiff contends it is necessary that five per cent of all gross income be set aside for debt retirement, and, in addition, other current and ordinary expenses, including depreciation, bad debts, maintenance and repair of buildings and grounds, and salaries, must be paid before there can be any net earnings. It further contends that the stipulation shows that no net earnings have been distributed to members and therefore the plaintiff definitely comes within the tax exemption. In other words, the plaintiff construes the word "inures" to mean "paid."

Plaintiff concedes that the words "net earnings" and "net profits" mean the same thing. We find no Wisconsin case that defines "net earnings" but in *Thomas v. Columbia Phonograph Co.* (1911), 144 Wis. 470, 473, 129 N. W. 522, this court discussed the term "net profits" in the following language:

"When the words 'net profits' are applied to a course of dealing involving several successive transactions, the idea of time is inseparably involved in the expression. For re-

ceipts and disbursements, gains and losses, in such case are never simultaneous, and some period is always meant at the end of which net profits may be ascertained. The words 'net profits,' unqualified by custom, usage, or by other words in the contract, would naturally refer to the termination of the adventure. They may also refer to the expiration of a year or other fiscal period at the end of which profits are to be computed, but which is a fraction of and within the period of adventure. But in this latter case, if the business continues and covers several of such fiscal periods and the period is for the purpose of computation only and not for the purpose of terminating the adventure, losses and gains arising out of matters covered by an earlier fiscal period, but occurring after ascertainment of the profits for that period, are carried into and increase or diminish the net profits in the next or some succeeding fiscal period. It does not necessarily alter this that the parties are at liberty at the end of any fiscal period to draw out the profits or a fraction of the profits thus computed, if the adventure is to continue. This is illustrated by the ordinary profit and loss account closed at the end of a fiscal year. Anything thereafter realized thereon goes to increase the net profits of the next or some succeeding year. Anything included in the profits of any fiscal period during the adventure which afterwards turned out to be a loss goes to diminish the net profits of the next or some succeeding year."

The word "inures" is defined in Webster's New International Dictionary (2d ed., unabridged), as

"To pass into use; to take or have effect; to be or become operative; to be applied; to serve to the use or benefit; as, a gift of land *inures* to the heirs."

The fallacy of plaintiff's argument is that there must be a payment to the members in a given year or it is entitled to the exemption. This does not take into account the time element referred to in the *Thomas Case, supra*. No financial statements, current or otherwise, of the operation of the plaintiff are included in the record. However, debt retirement increases the net assets of the plaintiff and we

can only conclude that a current financial statement would show net capital assets which have already inured to the benefit of the members. The net assets would be available to the members upon dissolution of the corporation or upon a sale of its assets. The fact that the plaintiff has provided in its by-laws that it is its present intention to convey its property only to some benevolent corporation does not restrict it to a gift to such corporation but permits a sale with the net proceeds available to the members.

At the time it claimed a tax-exempt status the plaintiff had a duty to prove, at the very least, that no net income or net profits had then been accumulated that inured to the benefit of its members. The plaintiff has not proved that it is within the exact terms of the exemption statute and the trial court was correct in its determination of the issue.

*By the Court.*—Judgment affirmed.