COVENANT HEALTHCARE SYSTEM, INC.,
Plaintiff-Respondent-Petitioner,

v.

CITY OF WAUWATOSA, Defendant-Appellant.

Supreme Court

*No. 2009AP1469 and 2009AP1470,*
*Oral argument April 15, 2011.—Decided July 19, 2011.*

2011 WI 80

(Also reported in 800 N.W.2d 906.)

For the plaintiff-respondent-petitioner there were briefs by *Don M. Millis, Kristina E. Somers,* and *Reinhart Boerner Van Deuren S.C.*, Madison, and oral argument by *Don M. Millis.*

For the defendant-appellant there was a brief by *Robert Horowitz* and *Stafford Rosenbaum, L.L.P.,* Madison, *Alan R. Kesner,* city attorney and *Beth Thorson Aldana* assistant city attorney, Wauwatosa and oral argument by *Robert Horowitz.*

There was an amicus brief by *Jennifer A. Slater Carlson* and *Legal Advantage, L.L.C.,* Cedarburg on behalf of Association of Assessing Officers.

There were amicus briefs by *Beth Ermatinger Hanan* and *Chrispother P. Dombrowicki* and *Gass Weber Mullins, L.L.C.,* Milwaukee on behalf of Attorneys for Rural Wisconsin Heath Cooperative.

There was an amicus brief by *Claire Silverman, Legal of Wisconsin Municipalities,* Madison on behalf of League of Wisconsin Municipalities.

There were amicus briefs by *David J. Edquist* and *von Breisen & Roper, S.C.,* Milwaukee on behalf of Attorneys for the Wisconsin Hospital Association.

¶ 1. MICHAEL J. GABLEMAN, J. This is a review of a published decision of the court of appeals[1] that reversed the judgment and order of the circuit court for Milwaukee County, the Honorable Elsa C. Lamelas presiding, in favor of Covenant Healthcare System, Inc. (Covenant). Covenant is the sole member of the St. Joseph Regional Medical Center, Inc., (St. Joseph) which in turn owns the St. Joseph Outpatient Clinic (Outpatient Clinic). In 2003, Covenant constructed a five-story building in the City of Wauwatosa (the City) to house the Outpatient Clinic. The Outpatient Clinic provides a broad range of outpatient medical services, including a 24–hour urgent care center.

---

[1] *Covenant Healthcare System, Inc. v. City of Wauwatosa,* 2010 WI App 125, 329 Wis. 2d 393, 791 N.W.2d 205.

527

¶ 2. Covenant filed timely Property Tax Exemption Requests with the City in each year from 2003 to 2006. Covenant sought a tax exemption for the Outpatient Clinic as property used exclusively for the purpose of a hospital under Wis. Stat. § 70.11(4m)(a) (2007–08).[2] The city assessor denied the exemption for each of these four years and Covenant paid the assessed tax. Covenant then brought an action pursuant to Wis. Stat. § 74.35(3)(d) to recover the amount of the City's allegedly unlawful assessment. The City primarily argued that the Outpatient Clinic was a doctor's office, and therefore was not entitled to the property tax exemption under § 70.11(4m)(a). In the alternative, the City argued that the Outpatient Clinic was not exempt because it was used for commercial purposes and because a benefit inured to St. Joseph's sole member, Covenant.

¶ 3. We hold that the Outpatient Clinic is used for the primary purposes of a hospital and therefore qualifies as tax-exempt property under Wis. Stat. § 70.11(4m)(a). Additionally, we hold that the Outpatient Clinic is neither a doctor's office nor a property used for commercial purposes within the meaning of § 70.11(4m)(a). Finally, we conclude that no benefit inures to any member of St. Joseph because the term "member" under § 70.11(4m)(a) does not include not-for-profit entities.

## I. BACKGROUND

¶ 4. We draw our facts from the extensive factual findings made by the circuit court after it conducted a nine-day bench trial on the issues we now review.

---

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

## A. St. Joseph Outpatient Clinic

¶ 5. The Outpatient Clinic is a freestanding outpatient medical facility located in the City. The Outpatient Clinic was owned and operated by St. Joseph from 2003 through 2006, the tax years in dispute. Covenant is the sole member of St. Joseph.[3]

¶ 6. In 2003, Covenant constructed a five-story building to house the Outpatient Clinic and transferred ownership of the building and improvements to St. Joseph. Covenant continued to own the land on which the building was located but leased it to St. Joseph. The Outpatient Clinic is located on three of the five floors: the first, third, and fourth. St. Joseph leased the second floor to the Covenant Medical Group, Inc., and leased the fifth floor to various physicians and other medical providers. Covenant seeks property tax exemptions for only the three floors occupied by the Outpatient Clinic.

¶ 7. The Outpatient Clinic was constructed to significantly higher standards than a typical medical office building. It was constructed in conformity with the standards imposed by the Wisconsin Department of Health and Family Services for facilities that provide hospital ambulatory services.[4] The Outpatient Clinic operated under a hospital license. It was accredited by

[3] At all times pertinent to this action Covenant was an Illinois not-for-profit corporation. Covenant's two members, Wheaton Franciscan Services, Inc., and Felician Services, Inc., are both Illinois not-for-profit corporations. Covenant has been known as Wheaton Franciscan Healthcare-Southeast Wisconsin, Inc., since July 1, 2006.

[4] "Ambulatory care" is any medical care that is delivered on an outpatient basis. Outpatient care refers to medical care for patients who do not need to stay overnight in the medical facility. Outpatient care can include day surgery and other day services.

529

the Joint Commission on the Accreditation of Hospitals, an organization that does not accredit physician clinics. St. Joseph purchased all of the equipment necessary to provide outpatient services at the Outpatient Clinic, and the equipment is used exclusively by the Outpatient Clinic.

¶ 8. The Outpatient Clinic has a gift shop as well as a cafeteria that serves food to patients, visitors, and staff. Space within the Outpatient Clinic is available for community use, as well as internal education and support groups, such as pregnancy education classes. A separate parking structure and surface parking areas are adjacent to the Outpatient Clinic, but not connected to the Outpatient Clinic building.

¶ 9. The outpatient services provided at the Outpatient Clinic include: cardio/pulmonary services, continence and pelvic floor[5] services, laboratory services, outpatient surgery, pain management services, pediatric rehabilitation, physical therapy, radiology, sleep disorder services, women's health services, and wound care services.[6]

¶ 10. The Outpatient Clinic has an urgent care center (Outpatient Clinic Urgent Care Center) staffed

[5] The pelvic floor is a muscular partition at the base of the abdomen, attached to the pelvis. *See Churchill Livingstone Medical Dictonary* 364 (16th ed. 2008).

[6] Many of these outpatient services were previously offered by St. Joseph through the St. Joseph Ambulatory Care Center. In 1996, St. Joseph converted Lakeview Hospital—an inpatient hospital on Bluemound Road in Wauwatosa—to an outpatient medical facility (St. Joseph Bluemound Outpatient Hospital). The City's assessor was informed of this change in 1996, but continued to treat St. Joseph Bluemound Outpatient Hospital as tax-exempt until the services were moved to the Outpatient Clinic in 2003.

by board-certified emergency department physicians and nurses. The Outpatient Clinic Urgent Care Center is operated 24 hours a day, seven days a week. The Outpatient Clinic Urgent Care Center is complemented by a laboratory services department, also located within the Outpatient Clinic. The laboratory services department is also operated 24 hours a day, seven days a week. The Outpatient Clinic Urgent Care Center contains 18 beds which could be used as overnight beds in the case of a pandemic, epidemic, natural or man-made disaster. In the event of such an emergency, the Outpatient Clinic is prepared to house up to 45 patients overnight. The Outpatient Clinic Urgent Care Center, pursuant to the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, may not turn anyone away based on inability to pay.

¶ 11. The Outpatient Clinic Urgent Care Center treats all levels of emergency room care, but patients with more serious conditions are stabilized and then transferred to a different medical facility. Patients who visit the Outpatient Clinic Urgent Care Center are charged emergency room rates. The most common conditions treated by the Outpatient Clinic Urgent Care Center are broken bones, injuries requiring sutures, sprains and strains, accidents and falls, asthma, allergy attacks, eye injuries, rashes, minor burns, colds, and flu.

¶ 12. The Outpatient Clinic does not provide inpatient care. The circuit court's findings of fact explain that the Outpatient Clinic does keep patients overnight in the sleep laboratory, but those patients are not considered inpatients. Apart from the Outpatient Clinic Urgent Care Center, all services normally require referrals and appointments during regular business hours. Physicians performing services at the Outpatient Clinic may use

531

open cubicles as temporary workspace, but workspace is not designated or assigned to individual physicians.

## B. St. Joseph Hospital

¶ 13. In addition to the Outpatient Clinic, St. Joseph operates St. Joseph Hospital, a full-service hospital with 550 to 600 inpatient beds located on Chambers Street (the St. Joseph Chambers Street Hospital). The St. Joseph Chambers Street Hospital serves Milwaukee's inner city and its western suburbs, and is located approximately five miles from the Outpatient Clinic. It is undisputed that the St. Joseph Chambers Street Hospital is a tax-exempt hospital under Wis. Stat. § 70.11(4m)(a).

¶ 14. St. Joseph constructed the Outpatient Clinic with a desire to move services away from the St. Joseph Chambers Street Hospital. There were a variety of reasons for this: to relieve parking difficulties at the St. Joseph Chambers Street Hospital, to free up space for outpatient services at the St. Joseph Chambers Street Hospital, to reduce diversion of ambulances to the St. Joseph Chambers Street Hospital and other hospital emergency rooms, to provide medical services that cover the lifespan of women in one location, to improve efficiency and reduce the footsteps required of nurses when providing medical services, to facilitate recruitment of physicians through convenient highway access and parking, and to provide hyperbaric chambers care for which the St. Joseph Chambers Street Hospital lacked space. Additionally, St. Joseph hoped to facilitate recruitment of nurses and address nursing shortages because nurses at the Outpatient Clinic would not be on call after hours or on weekends (in contrast to the outpatient surgery nurses at the St.

Joseph Chambers Street Hospital who were on call after hours as well as on the weekends).[7]

¶ 15. The St. Joseph Chambers Street Hospital has a number of features that are integrated with the services offered at the Outpatient Clinic. All hospital and outpatient records are accessible at both locations, and the facilities share an online registration system. The same four physician groups provide radiology, anesthesiology, pathology (laboratory), and urgent care services at both locations. They also share the same billing system and operate under the same hospital license. Patients and/or insurance providers pay a facility fee for use of the Outpatient Clinic or the St. Joseph Chambers Street Hospital. Both locations share department heads and administrators at each facility are routinely on call at the other facility.

¶ 16. Physicians with privileges at the Outpatient Clinic or the St. Joseph Chambers Street Hospital work with nurses and other staff employed by St. Joseph, but do not employ or supervise these nurses and staff members. Physicians at both facilities have their own practices and are not employed by St. Joseph. The physicians at both facilities typically issue a bill for their professional services that is separate from the facility fee charged by St. Joseph.

## II. PROCEDURAL HISTORY

¶ 17. Covenant filed timely Property Tax Exemption Requests with the City of Wauwatosa in each year from 2003 to 2006. Covenant claimed property tax exemptions for both the Outpatient Clinic building and the land on which the building is located. The city

---

[7] There is some overlap between the outpatient services available at the St. Joseph Chambers Street Hospital and the Outpatient Clinic. The record does not detail the extent of this overlap.

assessor denied the property tax exemption for each of these four years and Covenant paid the assessed tax.

¶ 18. Covenant brought an action pursuant to Wis. Stat. § 74.35(3)(d) to recover the amount of the City's allegedly unlawful assessment. The circuit court conducted a nine-day bench trial and, after extensive findings of fact, concluded that the Outpatient Clinic was exempt from taxation as a property used exclusively for the purposes of a hospital pursuant to Wis. Stat. § 70.11(4m)(a).

¶ 19. On appeal, the court of appeals reversed, holding that the Outpatient Clinic was a doctor's office and therefore not eligible for the property tax exemption found in Wis. Stat. § 70.11(4m)(a).

¶ 20. We granted review on December 7, 2010, and now reverse the decision of the court of appeals.

### III. STANDARD OF REVIEW

¶ 21. This case involves the interpretation of the property tax exemption statute for not-for-profit hospitals, found in Wis. Stat. § 70.11(4m)(a). The interpretation of a statute is a question of law that we review de novo. *Hocking v. City of Dodgeville*, 2010 WI 59, ¶ 17, 326 Wis. 2d 155, 785 N.W.2d 398. Whether the undisputed facts as found by the circuit court satisfy the statutory standard is also a question of law that we review de novo. *St. Clare Hosp. v. City of Monroe*, 209 Wis. 2d 364, 368–69, 563 N.W.2d 170 (Ct. App. 1997).

### IV. DISCUSSION

¶ 22. In Wisconsin, all property is subject to taxation unless specifically exempt. *See* Wis. Stat. § 70.01. The burden of showing that a property is exempt from

534

taxation is on the party seeking exemption. *Sisters of St. Mary v. City of Madison*, 89 Wis. 2d 372, 379, 278 N.W.2d 814 (1979). Tax exemption statutes are to be strictly construed against granting an exemption. *St. Clare Hosp.*, 209 Wis. 2d at 369. A strict construction, however, does not mean we give the statute the narrowest possible reading or an unreasonable construction. *Columbia Hosp. Ass'n v. City of Milwaukee*, 35 Wis. 2d 660, 668, 151 N.W.2d 750 (1967). Therefore, we apply a "strict but reasonable" interpretation to tax exemption statutes. *Id.*

¶ 23. This case requires us to determine whether the Outpatient Clinic qualifies for the exemption set forth in Wis. Stat. § 70.11(4m)(a), which exempts real property "used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled."[8] This requires us to consider four issues: (A) whether the Outpatient Clinic is used for the

---

[8] Wis. Stat. § 70.11(4m)(a), stated in full, exempts:

Real property owned and used and personal property used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled, which hospital is owned and operated by a corporation, voluntary association, foundation or trust, except an organization that is organized under s. 185.981 or ch. 611, 613 or 614 and that offers a health maintenance organization as defined in s. 609.01 (2) or a limited service health organization as defined in s. 609.01 (3) or an organization that is issued a certificate of authority under ch. 618 and that offers a health maintenance organization or a limited service health organization, no part of the net earnings of which inures to the benefit of any shareholder, member, director or officer, and which hospital is not operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or group of doctors. This exemption does not apply to property used for commercial purposes, as a health and fitness center or as a doctor's office. The exemption for residential property shall be limited to dormitories of 12 or more units which

purposes of a hospital and therefore qualifies for the exemption under § 70.11(4m)(a); (B) whether the Outpatient Clinic is a doctor's office and therefore is not exempt under § 70.11(4m)(a); (C) whether the Outpatient Clinic is used for commercial purposes and therefore is not exempt under § 70.11(4m)(a); (D) whether a benefit inured to Covenant and therefore the Outpatient Clinic is not exempt under § 70.11(4m)(a).

### A. Exclusive Use of the Outpatient Clinic

██

¶ 24. In order to qualify for the not-for-profit hospital exemption, a property must be "used exclusively for the purpose[] of [a] hospital . . . ." Wis. Stat. § 70.11(4m)(a). The parties do not dispute that the St. Joseph Chambers Street Hospital qualifies as an exempt hospital property.[9] The issue here is whether the Outpatient Clinic is exempt property even though it is located off-site five miles from the St. Joseph Chambers Street Hospital.[10]

---

house student nurses enrolled in a state accredited school of nursing affiliated with the hospital.

[9] The circuit court found that the St. Joseph Chambers Street Hospital is "a full-service large acute care hospital with 550 to 600 inpatient beds serving Milwaukee's inner city and its western suburbs."

[10] The City argues that the circuit court's finding that 66.07% of the total parking space was reserved for use by the Outpatient Clinic's patients and staff was clearly erroneous. The City also argues that the circuit court never found that the 42,000 square feet of public space contained in the Outpatient Clinic building was used exclusively for the Outpatient Clinic. The circuit court, however, exempted the public space in the Outpatient Clinic building based on the floors occupied by the

536

¶ 25. When an off-site facility is engaged in the primary purpose of the parent hospital we examine only whether the off-site facility is "used exclusively for the purposes of" that hospital. Wis. Stat. § 70.11(4m)(a).[11]

Outpatient Clinic. The City ignores our prior decisions which allow for exemptions to be allocated based on percentage of exempt use. *Deutsches Land, Inc. v. City of Glendale,* 225 Wis. 2d 70, 83–84, 591 N.W.2d 583 (1999); *Alonzo Cudworth Post No. 23 v. City of Milwaukee,* 42 Wis. 2d 1, 13–16, 165 N.W.2d 397 (1969); *Columbia Hosp. Ass'n v. City of Milwaukee,* 35 Wis. 2d 660, 675, 151 N.W.2d 750 (1967). It was reasonable for the circuit court to exempt the public space on the three floors on which the Outpatient Clinic operated and to exempt a proportional share of the parking spaces.

[11] We first considered whether off-site hospital-owned facilities could qualify as exempt property in *Columbia Hospital,* 35 Wis. 2d 660. In *Columbia Hospital,* we held that hospital-owned residences for intern and resident doctors located two miles from the hospital qualified as exempt property. *Id.* at 675. We concluded that the proximity of these residences to the hospital was not the appropriate test under the statute. *Id.* at 673. Rather, we held that the exemption should apply to off-site facilities of "reasonable necessity to the efficient functioning of the hospital as an organization." *Id.* at 671. We reasoned that attracting qualified intern and resident doctors was of reasonable necessity to the efficient functioning of Columbia Hospital. *Id.* at 673–74.

We again applied the "reasonable necessity" test in *Sisters of St. Mary,* 89 Wis. 2d 372, 278 N.W.2d 814 (1979). In that case, we held that a single-family residence owned by a religious order and used exclusively as the residence of a full-time chaplain for a not-for-profit hospital was reasonably necessary to the efficient functioning of St. Mary Hospital. *Id.* at 383–84.

Both *Sisters of St. Mary* and *Columbia Hospital* applied the reasonable necessity test to facilities which were secondary to the hospitals' primary purpose of diagnosing, caring, and treating the sick, injured, and disabled, and yet concluded the facilities should be tax-exempt. In this case, the Outpatient

537

Specifically, we now examine whether the Outpatient Clinic is used exclusively for the primary purposes of the St. Joseph Chambers Street Hospital.

¶ 26. The circuit court found that "St. Joseph embarked on the Outpatient Clinic project because of genuine limitations confronting [the St. Joseph Chambers Street Hospital] in the delivery of medical services." One purpose of the Outpatient Clinic's construction was to reduce the diversion hours at the St. Joseph Chambers Street Hospital by rerouting less serious emergencies to the Outpatient Clinic Urgent Care Center. Diversion occurs when emergency rooms reach capacity and can accept no more ambulances. The record demonstrates that the Outpatient Clinic Urgent Care Center has substantially reduced the diversion hours at the St. Joseph Chambers Street Hospital. From July 2001 to June 2003, the St. Joseph Chambers Street Hospital averaged 53.74 diversion hours per month. The Outpatient Clinic Urgent Care Center opened in July 2003. From July 2003 to June 2007, the number of diversion hours dropped to 9.18 hours per month. This is an 83% reduction in the average diversion hours at the St. Joseph Chambers Street Hospital. Such a reduction in diversion hours advances the primary purpose of the St. Joseph Chambers Street Hospital by expanding the availability of its emergency room to receive patients.

¶ 27. The circuit court found that another purpose of the Outpatient Clinic's construction was to house hyperbaric chambers. No space was available at the St. Joseph Chambers Street Hospital to provide hyperbaric chambers care. Three patients from the St.

Clinic is not a facility engaged in a secondary purpose, such as housing resident doctors. Instead, the Outpatient Clinic is engaged in St. Joseph's primary purpose—caring for the sick.

Joseph Chambers Street Hospital were transported to the Outpatient Clinic to use this system in 2004, one in 2005, and three in 2006. The circuit court found that the Outpatient Clinic fulfilled the primary purpose of the St. Joseph Chambers Street Hospital in a variety of other ways: freeing up space for outpatient services, delivering services more conveniently and efficiently, creating a single unit to address the special health needs of women throughout their lives, and providing the most modern facilities and equipment for patients, visitors, and staff.

¶ 28. In fulfilling this primary purpose, the circuit court found that the Outpatient Clinic's systems are fully integrated with the St. Joseph Chambers Street Hospital. Patient medical and pharmaceutical records can be accessed at both facilities. The same billing system is used at both facilities. Departments at both facilities are generally led by the same person. Both facilities operate under the same hospital license. The same four physician groups provide radiology, anesthesiology, pathology, and urgent care services at both locations.

¶ 29. The circuit court concluded that the Outpatient Clinic, as designed, constructed, and operated, addressed limitations and goals that could not be addressed or satisfied within the physical confines of the St. Joseph Chambers Street Hospital. We agree with the circuit court that the Outpatient Clinic effectively serves as a department of the larger St. Joseph Chambers Street Hospital. In light of this, we conclude that the Outpatient Clinic is used exclusively for the purposes of a hospital—the St. Joseph Chambers Street Hospital—and therefore qualifies for the property tax exemption under Wis. Stat. § 70.11(4m)(a).[12]

[12] The City argues that our holding would exempt every off-campus hospital-owned clinic statewide, and thus substan-

## B. Doctor's Office

■■

¶ 30. We next consider whether the Outpatient Clinic qualifies as a "doctor's office" as that term is used under Wis. Stat. § 70.11(4m)(a). If the Outpatient Clinic is a doctor's office, then it does not qualify for a tax exemption. *Id*. Covenant bears the burden of establishing that the Outpatient Clinic is not a doctor's office. *St. Elizabeth Hosp., Inc. v. City of Appleton*, 141 Wis. 2d 787, 791, 416 N.W.2d 620 (Ct. App. 1987).

■

¶ 31. The simplest definition of "doctor's office," as the court of appeals recognized in *St. Clare Hospital,* is "the building where doctors have their offices." 209 Wis. 2d at 373. This definition provides a helpful starting point, but "whether a building is used as a doctor's office depends on the nature of services provided and the manner in which these services are delivered to the patient." *Id*. (internal quotation omitted). The determination of whether property is used as a doctor's office ultimately turns on the facts of each case. *Id*. at 372.

tially erode municipal tax bases. This slippery slope argument, however, fails to take into account that owners of such clinics still bear the burden of establishing that those clinics are not doctor's offices and that they are not used for commercial purposes. Once this is established, the owner bears an additional burden of establishing that the off-campus clinic is used for the primary purpose of the parent hospital. We base our holding in this case on the 212 factual findings made by the circuit court. These extensive findings convince us that Covenant has met its burden to prove that the Outpatient Clinic is not a doctor's office, that the Outpatient Clinic is not used for commercial purposes, and that the Outpatient Clinic meets the statutory criteria for exemption.

██

¶ 32. While we are required to strictly construe tax exemption statutes in favor of taxation, the statute need not be given an unreasonable construction or the narrowest possible construction. *Columbia Hosp.*, 35 Wis. 2d at 668. Moreover, it should not be so strictly construed as to defeat the legislative intent of creating the exemption—here, to encourage not-for-profit hospitals to provide care for the sick. *See St. Clare Hosp.*, 209 Wis. 2d at 369.

¶ 33. The City argues that we should consider only the factors that can be perceived by an ordinary patient when we determine whether the Outpatient Clinic is a doctor's office. While the City's argument has the allure of simplicity, we conclude its limited approach improperly overlooks pertinent case law. The decisions of the court of appeals in *St. Clare Hospital* and *St. Elizabeth Hospital* illustrate the broad range of factors that have been considered relevant in determining whether a medical facility qualifies as a doctor's office.[13]

---

[13] It should be noted that neither *St. Clare Hospital* nor *St. Elizabeth Hospital* set forth a test with factors that must be applied in every case. The *St. Elizabeth Hospital* court described its analysis in terms of "the overwhelming facts of this case," and then considered a few of those facts. *St. Elizabeth Hospital, Inc. v. City of Appleton*, 141 Wis. 2d 787, 793, 416 N.W.2d 620 (Ct. App. 1987). Its decision did not purport to establish a test for determining whether a facility is a doctor's office, requiring that the particular factors considered in St. Elizabeth Hospital be met in order to reach a similar conclusion. The court of appeals recognized this in *St. Clare Hospital* when it noted, "We did not imply that satisfaction of the four factors listed [in *St. Elizabeth Hospital*] would conclusively establish that property was not used as a doctor's office, nor did we imply that the absence of any or all of these factors would establish that property was used as a doctor's office." *St. Clare*

¶ 34. Our appellate courts first interpreted the term "doctor's office" in St. Elizabeth Hospital. 141 Wis. 2d 787. In *St. Elizabeth Hospital,* the court of appeals considered whether a walk-in medical services area called "First Care," attached to St. Elizabeth Hospital's emergency room facility, was a doctor's office as that term is used in Wis. Stat. § 70.11(4m)(a). The court relied on four particular facts in holding that the First Care area did not constitute a doctor's office: (1) physicians neither owned nor leased the First Care facility or its equipment; (2) physicians did not receive variable compensation related to the scope or extent of their services;[14] (3) physicians did not employ or supervise non-physician staff; and (4) billing statements were issued by St. Elizabeth. *Id.* at 793.

*Hosp. of Monroe v. City of Monroe,* 209 Wis. 2d 364, 371, 563 N.W.2d 170 (Ct. App. 1997). The facts that were significant in *St. Clare Hospital* and *St. Elizabeth Hospital* are not prongs of a test that must be met or even considered in every case.

[14] "Variable compensation" refers to compensation that is directly related to the productivity of the doctor. Typically, as found by the circuit judge in *St. Clare Hospital,* the doctor receives compensation relating to their productivity in addition to a base salary. *St. Clare Hosp. v. City of Monroe,* 1994CV81, Findings of Fact and Conclusions of Law 10–11 (Cir. Ct. for Green County). Using this formula, "each doctor has the opportunity to make more money by increasing the doctor's productivity." *Id.* at 10. A doctor may increase his or her productivity "by working more hours, seeing more patients within whatever hours the doctor works, and performing more procedures." *Id.*

In *St. Clare Hospital,* the doctors were paid a base salary in addition to productivity-related compensation. *Id.* By contrast, at the Outpatient Clinic, doctors are neither paid a base salary nor provided compensation related to their productivity. In fact, doctors who perform procedures at the Outpatient Clinic are not employees of the Outpatient Clinic, unlike the doctors in *St. Clare Hospital.*

¶ 35. Ten years after *St. Elizabeth Hospital,* the court of appeals again examined the term "doctor's office" in *St. Clare Hospital,* 209 Wis. 2d 364. In *St. Clare Hospital,* the court of appeals considered whether a newly constructed free-standing clinic that was connected to a hospital by a skywalk was a doctor's office. The *St. Clare Hospital* court held that while "the factors set forth in *St. Elizabeth Hospital* are helpful," the court emphasized that "the determination of whether property is used as a doctor's office ultimately turns on the facts of each case." *Id.* at 372.

¶ 36. The *St. Clare Hospital* court discussed seven separate factors that were significant to its conclusion, six of which weighed in favor of classifying the new clinic building as a doctor's office: (1) the clinic physicians received variable compensation related to the extent of their services; (2) the clinic physicians who oversaw non-physician staff received extra compensation; (3) the new clinic's bills were generated on a separate software system from the hospital's bills; (4) each doctor practicing in the new clinic had an office in the building; (5) the new clinic provided care on an outpatient, as opposed to inpatient, basis; (6) the new clinic was open during regular business hours during which the physicians saw most patients by appointment. *Id.* at 371–73. The seventh factor, the only relevant factor that weighed against a finding that the new clinic was used as a doctor's office, was the fact that the doctors did not own or lease the building or equipment. *Id.* at 372. The *St. Clare Hospital* court concluded that the fact that the doctors did not own or lease the building or equipment was insufficient in light of all the relevant factors to hold that the clinic was not a doctor's office.

¶ 37. Applying the factors relied upon by the *St. Clare Hospital* and the *St. Elizabeth Hospital* courts to

543

the facts found by the circuit court in this case, we conclude that Covenant has met its burden of demonstrating that the Outpatient Clinic is not a doctor's office. First, physicians practicing at the Outpatient Clinic do not receive variable compensation related to the extent of their services. Second, the Outpatient Clinic physicians do not receive extra compensation for overseeing non-physician staff. Third, the Outpatient Clinic's bills are generated on the same software system as the bills generated by St. Joseph. Fourth, physicians at the Outpatient Clinic do not have their own offices. Instead, Outpatient Clinic Physicians have shared access to unassigned cubicles. Fifth, the physicians practicing at the Outpatient Clinic do not own or lease the building or equipment—all equipment is the exclusive property of St. Joseph.

¶ 38. The City notes that two factors relied upon by the *St. Clare Hospital* court weigh against our conclusion that the Outpatient Clinic is not a doctor's office. Specifically, the City notes that, like the clinic in *St. Clare Hospital*, (1) the Outpatient Clinic does not provide inpatient services, and (2) most patients are seen by physicians at the Outpatient Clinic by appointment during regular business hours. Although these factors were important to the court of appeals' conclusion in *St. Clare Hospital*, these factors alone are not determinative.

¶ 39. First, technological advances have made it possible for more complex procedures to be conducted on an outpatient basis. For example, a foot or ankle surgery that once may have required one or two nights recovery in an inpatient hospital may now be performed at the Outpatient Clinic with recovery at home. The fact that these complex procedures are performed in an outpatient setting does not automatically convert the

Outpatient Clinic into a doctor's office. Second, most services performed in the outpatient center of the St. Joseph Chambers Street Hospital (and other large hospitals) are performed by appointment during business hours. The City concedes that the outpatient center at the St. Joseph Chambers Street Hospital is tax-exempt. It is unreasonable to penalize St. Joseph for providing these services at the Outpatient Clinic when the performance of those same services would not disturb the tax-exempt status of the larger St. Joseph Chambers Street Hospital.

¶ 40. Other facts found by the circuit court bolster our conclusion that the Outpatient Clinic is not a doctor's office as that term is used in Wis. Stat. § 70.11(4m)(a). The Outpatient Clinic contains a gift shop and a cafeteria for the use of patients, visitors, and staff. Typical doctor's offices do not contain such amenities. Further, the Outpatient Clinic Urgent Care Center is designed to operate similarly to an emergency room. It may accept emergency ambulances and has the capability to treat all levels of emergency care. Typical doctor's offices have no such advanced emergency care operations.

¶ 41. Moreover, when a patient receives services in a typical doctor's office, he or she receives one bill for the visit. When a patient receives services at the Outpatient Clinic, however, the patient receives a facility bill from the Outpatient Clinic as well as a professional bill from the attending physician.

¶ 42. Significantly, the circuit court found that St. Joseph had previously provided these services through the St. Joseph Bluemound Outpatient Hospital, which the City considered tax-exempt property from 1996 until 2003. It was only after the Outpatient Clinic absorbed and upgraded the services offered at St.

Joseph Bluemound Outpatient Hospital that the City considered the tax exemption under Wis. Stat. § 70.11(4m)(a) to be improper. This is distinguishable from the situation in *St. Clare* where the hospital purchased a private doctor's office that had never before qualified as tax-exempt. In the instant case, to the extent that an already existing facility—St. Joseph Bluemound Outpatient Hospital—was being replaced, it was a facility that both the city and St. Joseph had treated as a tax-exempt outpatient hospital. Although the Outpatient Clinic was the replacement for St. Joseph Bluemound, it was not afforded the same tax-exempt status.

■■ ■

¶ 43. To support its contention that the Outpatient Clinic is a doctor's office, the City also points to the fact that the Outpatient Clinic is five miles away from the St. Joseph Chambers Street Hospital. The plain language of Wis. Stat. § 70.11(4m) belies the City's argument that proximity is relevant to this issue. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . ." *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. Only the provision of § 70.11(4m) prohibiting an exemption for health and fitness facilities contains language that indicates proximity is a relevant consideration. *See* Wis. Stat. § 70.11(4m)(c). This particular provision states that health and fitness facilities must be "within the physical confines of a hospital" in order to be exempt. *Id.* By contrast, § 70.11(4m)(a), the provision relevant in this case, contains no language indicating that the legislature intended to make proximity to St. Joseph a valid consideration in the analysis of whether

the Outpatient Clinic is a doctor's office. Accordingly, we conclude that proximity to the St. Joseph Chambers Street Hospital is irrelevant when considering whether the Outpatient Clinic qualifies as a doctor's office.

¶ 44. Considering all of the relevant findings of fact, as well as the analysis in *St. Elizabeth Hospital* and *St. Clare Hospital,* we conclude that Covenant has met its burden of establishing that the Outpatient Clinic is not a doctor's office under Wis. Stat. § 70.11(4m)(a).[15]

---

[15] We are surprised by several points in the dissent's argument that the Outpatient Clinic is "used as a doctor's office." *See* Wis. Stat. § 70.11(4m). While the dissent complains that we focus on a number of factors that are "business choices" rather than on facts relating to "the nature of services provided and manner in which these services are delivered to the patient," the factors we rely upon are the same as those considered by the court of appeals in *St. Elizabeth Hospital* and *St. Clare Hospital.* These two cases are the only appellate decisions that have addressed the question of what constitutes a "doctor's office" under § 70.11(4m), and so it should be foreseeable that we would consider the same factors.

Additionally, several of the findings of fact provided by the dissent as evidence in support of its conclusion that the Outpatient Clinic is a doctor's office simply do not support that argument. For example, the dissent notes that "[t]wo of the five floors of the Outpatient clinic were leased by medical professionals for their own practices, providing outpatient services. Covenant does not claim exemption for these two floors." While this is true, it has no relevance to the question at hand— whether the Outpatient Clinic is a "doctor's office."

The dissent urges us to adopt a new test wherein we look to whether "[a] patient would perceive the Outpatient Clinic to be a property used as a doctor's office." However, the findings of fact that the dissent focuses on to show that the Outpatient Clinic is a doctor's office would go unnoticed by most patients. Would a patient, for instance, be aware that the "outpatient surgery center within the Outpatient Clinic . . . does not treat

## C. Commercial Purposes

¶ 45. We next consider whether the Outpatient Clinic is "used for commercial purposes" under Wis. Stat. § 70.11(4m)(a). If the Outpatient Clinic is used for commercial purposes, then it does not qualify for an exemption. *See* § 70.11(4m)(a). Covenant bears the burden of establishing that the Outpatient Clinic is not used for commercial purposes. *See FH Healthcare Dev., Inc. v. City of Wauwatosa,* 2004 WI App 182, ¶ 18, 276 Wis. 2d 243, 687 N.W.2d 532.

¶ 46. In *FH Healthcare,* the court of appeals held that "commercial purposes are those through which profits are made." 276 Wis. 2d 243, ¶ 20. The City argues that the Outpatient Clinic is used for commercial purposes because the predominant purpose of the Outpatient Clinic is to generate profit through direct competition with other outpatient clinics, both for-profit and not-for-profit. By defining "profits" as "revenues in excess of costs," the City's argument oversimplifies the meaning of the term "commercial purpose" when used in the context of a not-for-profit entity.

¶ 47. A not-for-profit entity "is not required to use only red ink in keeping its books and ledgers." *Milwaukee Protestant Home for the Aged v. City of Milwaukee,*

---

patients whose estimated recovery time is" greater than four hours? In a similar vein, would a patient really consider the fact that the Outpatient Clinic is open 24 hours a day for care as evidence that the Outpatient Clinic operates as a typical doctor's office?

Put simply, the dissent is advocating a new, unworkably narrow "patient's view" approach to determine whether the Outpatient Clinic is a doctor's office. Not only does the dissent fail to cite authority for this approach; it also fails to apply its approach to the facts of this case in a consistent manner.

41 Wis. 2d 284, 296, 164 N.W.2d 289 (1969). In order to survive, not-for-profit entities must cover costs. *See Duncan v. Steeper*, 17 Wis. 2d 226, 236, 116 N.W.2d 154 (1962). "To deny an otherwise qualifying institution charitable status because it is efficiently organized and managed, so as to operate in the black, would be not only illogical but also extremely detrimental to the incentive for sound management in such institutions." *Id.* Our case law, therefore, makes clear that not-for-profit entities may operate in such a fashion that generates revenues in excess of expenses. Otherwise, in order to qualify for the property tax exemption, all not-for-profit hospitals would be required to either continually operate at a loss or otherwise obtain precisely enough revenue to cover costs and no excess. Accordingly, in the context of not-for-profit entities, we decline to limit the definition of "commercial purposes" to those purposes which generate profits.

¶ 48. The *FH Healthcare* court cited an alternative definition of the term "commercial" which we find more appropriate in defining the phrase "commercial purposes."[16] This definition was "having profit as the *primary* aim." 276 Wis. 2d 243, ¶ 20 (citing Webster's Third New International Dictionary 456 (1993)) (emphasis added). We conclude this definition is a more appropriate one for the purposes of the not-for-profit hospital exemption.

¶ 49. As the circuit court's findings of fact show, the Outpatient Clinic is primarily devoted to the diagnosis, treatment and care of the sick, injured, and disabled. The City ignores that the Outpatient Clinic's

---

[16] "The common and approved usage of words can be established by the definition of a recognized dictionary." *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 16, 245 Wis. 2d 396, 629 N.W.2d 662.

business plan lists and describes several other goals beyond increasing its profit margin. The business plan includes the purpose of promoting a greater faith-based healthcare presence. Additionally, the circuit court found that St. Joseph serves a greater portion of Medicare and Medicaid patients than other Milwaukee and Wisconsin hospitals. This is not a case where private physicians or individual shareholders will receive any excess revenues that the Outpatient Clinic generates. The primary aim of the Outpatient Clinic is not, as the City asserts, to earn profits.

¶ 50. In light of these facts, we conclude that the Outpatient Clinic is not operated for commercial purposes under Wis. Stat. § 70.11(4m)(a).

## D. Inurement to a Member

¶ 51. Section 70.11(4m)(a) exempts hospital property from taxation so long as "no part of the net earnings . . . inures to the benefit of any shareholder, *member,* director or officer . . . ." (Emphasis added.) Covenant is a not-for-profit corporation and is the sole member of St. Joseph.[17] It is St. Joseph which owns the Outpatient Clinic. Because we assume that the net

---

[17] Wisconsin Stat. ch. 181 governs not-for-profit corporations. For the purposes of Chapter 181, "member" is defined as an individual or corporation "who has membership rights in a corporation in accordance with the provisions of its articles of incorporation or bylaws." Wis. Stat. §§ 181.0103(15), 990.01(26). Among other responsibilities, members are responsible for selecting the not-for-profit corporation's board of directors. Wis. Stat. § 181.0804(1). *See also Nonprofit Governance: The Executive's Guide* 233–38 (Victor Futter & George W. Overton eds., 1997). The rights and obligations of members in a not-for-profit corporation are defined in Wis. Stat. §§ 181.0601–181.0747 and are

earnings of St. Joseph inure to the benefit of Covenant, the issue turns on whether a not-for-profit hospital corporation (Covenant) qualifies as a "member" as that term is used in § 70.11(4m)(a).

¶ 52. "[S]tatutory interpretation begins with the language of the statute." *Kalal,* 271 Wis. 2d 633, ¶ 45. We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* Context is important to meaning, "as is the structure of the statute in which the operative language appears." *Id.,* ¶ 46. "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.* We now discuss why it would be unreasonable to classify not-for-profit corporations as "member[s]" under Wis. Stat. § 70.11(4m)(a).

¶ 53. We interpreted the inurement restriction of Wis. Stat. § 70.11(4m)(a) in *Bethel Convalescent Home, Inc. v. Town of Richfield,* 15 Wis. 2d 1, 111 N.W.2d 913 (1961). In *Bethel,* we considered whether a not-for-profit hospital corporation qualified for exemption. Five-percent of the hospital corporation's gross in-

---

roughly equivalent to the rights and obligations of a shareholder in a for-profit corporation. *See Nonprofit Governance* at 234–35.

The issue here is whether a not-for-profit corporation qualifies as a "member" under a different chapter, specifically Wis. Stat. ch. 70. Chapter 70 contains no definition of the term "member." Therefore, we apply principles of statutory interpretation to determine whether a "member" of a not-for-profit corporation under Chapter 181 is also a "member" under the hospital tax exemption found in Wis. Stat. § 70.11(4m)(a).

come[18] was set aside to retire debt incurred in acquiring real property owned by the hospital corporation. *Id.* at 4. As the *Bethel* court noted, when gross income is used to retire debt it increases the hospital corporation's net capital assets. *Id.* at 5. The hospital corporation's net capital assets—now increased in value by the expenditure of the hospital's gross income—were available to the five individual members of the hospital corporation upon dissolution. *Id.* at 6. We held that when a hospital corporation used income to increase net capital assets, a benefit inured to the hospital corporation's five individual members, regardless of whether those individual members received an immediate payout. *Id.*

¶ 54. In other words, the *Bethel* court held that a benefit inures to a "shareholder, member, director, or officer" when that person may receive a not-for-profit corporation's assets on dissolution.[19] If we interpret the term "member" in Wis. Stat. § 70.11(4m)(a) to include not-for-profit corporate members, then those not-for-profit corporate members would have' to be excluded from any distribution of assets upon dissolution. Thus, in the instant case, St. Joseph would be precluded from leaving any assets to its sole member, Covenant, upon dissolution. As the circuit court concluded, this is an unreasonable construction of the statute.

¶ 55. In order to maintain their tax-exempt status, not-for-profit corporations would be required to rewrite their bylaws to provide that upon dissolution, their assets would go to unrelated not-for-profit enti-

---

[18] Gross income is typically defined as receipts and gains from all sources less cost of goods sold. Net earnings, synonymous with net income or net profit, typically equals gross income less total expenses and losses. When gross income is used to retire debt, it necessarily reduces net earnings.

[19] We assume, in this case, that the net earnings of St. Joseph have been used to increase its net capital assets.

ties.[20] Without doing so, a not-for-profit entity could never qualify for the tax exemption found in Wis. Stat. § 70.11(4m)(a) if it had a not-for-profit corporation as a member. We agree with the circuit court that "such a scenario may provide an interest in the failure of the [not-for-profit] hospital to the unrelated entity and would lead to an unreasonable construction of Wis. Stat. § 70.11(4m)(a)."

¶ 56. Further, our holding in *Bethel* is distinguishable from the instant case. The concern of the *Bethel* court was the possibility that private physicians would form a purportedly not-for-profit corporation in order to gain a tax exemption. This court has long established that private physicians or for-profit entities may not use a not-for-profit corporation as a vehicle through which to avoid tax liability. Prior to the enactment of Wis. Stat. § 70.11(4m), we consistently rejected physician efforts to obtain property tax exemptions for small hospitals created with a profit motive. *See Riverview Hosp. v. City of Tomahawk,* 243 Wis. 581, 586, 11 N.W.2d 188 (1943); *Prairie du Chien Sanitarium, Co. v. City of Prairie du Chien,* 242 Wis. 262, 267, 7 N.W.2d 832 (1943). In these early cases and in *Bethel*, the members who benefitted from the tax exemption were private individuals. In the instant case, the circuit court found and we agree that no benefit will inure to a private individual or for-profit entity from St. Joseph's net earnings.

¶ 57. To hold that the term "member" in Wis. Stat. § 70.11(4m)(a) includes not-for-profit entities would be

---

[20] Upon dissolution, tax-exempt entities, like St. Joseph, must provide for distribution of assets to other not-for-profit, tax-exempt entities. Tres. Reg. § 1.501(c)(3)-1(b)(4) (2008).,

contrary to longstanding principles of Wisconsin law. Such a holding would require every not-for-profit corporation in Wisconsin, in order to maintain its tax-exempt status, to rewrite its bylaws to provide that upon dissolution, its assets transfer to unrelated not-for-profit entities. This is an unreasonable result. Accordingly, we hold that the term "member" as it is used in Wis. Stat. § 70.11(4m)(a) does not include not-for-profit entities such as Covenant. We therefore hold that § 70.11(4m)(a)'s inurement restriction does not apply in this case.

## V. CONCLUSION

¶ 58. We hold that the Outpatient Clinic is used for the primary purposes of a hospital and therefore qualifies as tax-exempt property under Wis. Stat. § 70.11(4m)(a). Additionally, we hold that the Outpatient Clinic is neither a doctor's office nor a property used for commercial purposes within the meaning of § 70.11(4m)(a). Finally, we conclude that no benefit inures to any member of St. Joseph because the term "member" under § 70.11(4m)(a) does not include not-for-profit entities.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 59. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). To encourage non-profit hospitals to care for the sick, the legislature provides a property tax exemption for non-profit hospitals. *See* Wis. Stat. § 70.11(4m)(a); *St. Clare Hosp. of Monroe v. City of Monroe*, 209 Wis. 2d 364, 369, 563 N.W.2d 170 (Ct. App. 1997). But the tax exemption for property used exclusively by a non-profit

554

for hospital purposes "does not apply to property used . . . as a doctor's office." Wis. Stat. § 70.11(4m)(a).[1]

¶ 60. The rules applicable to interpreting Wis. Stat. § 70.11(4m) and applying the statute to the undisputed facts in the present case are as follows: A presumption exists that the property in question is taxable. Wis. Stat. § 70.109. Exemptions are strictly construed. Wis. Stat. § 70.109. The party claiming a tax exemption bears the burden of establishing that the property is not used as a doctor's office. Wis. Stat. § 70.109.[2]

¶ 61. I agree with the court of appeals that Covenant has not met its burden to prove that the facility at issue is not "used as a doctor's office." I therefore dissent.

I

¶ 62. The focus of inquiry is whether the facility at issue is "property used as a doctor's office" under Wis. Stat. § 70.11(4m)(a). The answer to this question requires the court to apply the "used as a doctor's office" exception, which was adopted in 1977, to the complexities of modern healthcare delivery. The court of appeals aptly stated fifteen years ago: "As the line of distinction between the traditional hospital and traditional doctor's office blurs, it becomes increasingly difficult to define 'property used as a doctor's office.'" *St. Clare Hosp.*, 209 Wis. 2d at 371–72. The line continues to blur.

---

[1] Because I conclude that the property is used as a doctor's office, I do not address the other issues Covenant or the majority opinion address.

[2] Wisconsin Stat. § 70.109, entitled "Presumption of taxability" provides: "Exemptions under this chapter shall be strictly construed in every instance with a presumption that the property in question is taxable, and the burden of proof is on the person who claims the exemption."

¶ 63. Healthcare delivery has changed considerably since 1977. An increasing number of healthcare services previously provided only in hospitals are now more efficiently and effectively provided in outpatient facilities. Large non-profit healthcare delivery systems have been created that deliver all aspects of medical services through complex entity structures, including outpatient care in freestanding facilities. Outpatient care may be provided in pharmacies, in shopping malls, and in big-box stores, as well as in office buildings. The large integrated health system model we have today strains the distinction created by the statutory language.

II

¶ 64. "Property used as a doctor's office" is not a technical phrase with a peculiar meaning in the law. *St. Clare Hosp.*, 209 Wis. 2d at 373.[3] "Property used as a doctor's office" is not what a complex healthcare entity might define as a "doctor's office," but rather should be given its ordinary meaning, in other words, what a patient (or a legislator) would consider to be a "doctor's office," considering the nature of the services provided and the manner in which those services are delivered to the patient.

¶ 65. The court of appeals described a "doctor's office" as "a place where doctors see patients, mostly by appointment, during scheduled business hours, and

_____

[3] One common notion of a doctor's office might be a facility that provides care on an outpatient basis, whereas a hospital provides inpatient, overnight care. *St. Clare Hospital of Monroe, Inc. v. City of Monroe*, 209 Wis. 2d 364, 373, 563 N.W.2d 170 (Ct. App. 1997).

have their offices."[4] This simple definition appropriately focuses the inquiry of whether a facility is "*used* . . . as a doctor's office" on the "nature of services provided and the manner in which these services are delivered to the patient."[5]

¶ 66. In contrast to a "doctor's office," a hospital is a place that offers "inpatient, overnight care." *St. Clare Hosp.*, 209 Wis. 2d at 373.

¶ 67. The "determination of whether property is used as a doctor's office ultimately turns on the facts of each case." *St. Clare Hosp.*, 209 Wis. 2d at 372. A court should look at the facts of each case to determine the similarities and dissimilarities between the property at issue and "a place where doctors see patients, mostly by appointment, during scheduled business hours, and have their offices" and a hospital that offers "inpatient, overnight care." In the present case, the following findings of fact of the circuit court support the conclusion that the use of the St. Joseph Outpatient Clinic is more similar to property used as "a place where doctors see patients, mostly by appointment, during scheduled business hours, and have their offices" than a hospital that delivers "inpatient, overnight care":

- The Outpatient Clinic is a freestanding outpatient medical facility, five miles from the St. Joseph inpatient hospital facility.

- The Outpatient Clinic, like a doctor's office, normally requires appointments during regular business hours.

- The Outpatient Clinic, unlike a hospital, does not provide inpatient care.

---

[4] *Covenant Healthcare System, Inc. v. City of Wauwatosa,* 2010 WI App 125, ¶ 17, 329 Wis. 2d 393, 791 N.W.2d 205.

[5] *St. Clare Hosp.*, 209 Wis. 2d at 373.

- The outpatient surgery center within the Outpatient Clinic, unlike a hospital, does not treat patients whose estimated recovery time is over four hours.

- Two of the five floors of the Outpatient Clinic were leased by medical professionals for their own practices, providing outpatient services. Covenant does not claim exemption for these two floors.

- The Urgent Care Center within the Outpatient Clinic, occupying less than 10% of the space, is not physically adjacent to an acute care hospital, and therefore lacks immediate access to the features of a full service, acute care inpatient hospital.

- The most common conditions treated by the Urgent Care Center are broken bones, injuries requiring sutures, sprains and strains, accidents and falls, asthma, allergy attacks, eye injuries, rashes, minor burns, colds, and flu. These conditions are all generally treated by a doctor outside a hospital.

- The Urgent Care Center, unlike a hospital, typically does not accept ambulances, but like a hospital is open 24 hours a day for care.

- Patients in the Urgent Care Center with more serious conditions are stabilized and then transferred to an emergency unit or admitted as an inpatient at a hospital.

¶ 68. In sum, the property at issue is a freestanding outpatient clinic owned by a non-profit hospital and used as doctors' offices to see patients and provide outpatient medical services, mostly by appointment, and mostly during scheduled business hours. It is important to point out that the instant case does not involve outpatient facilities within a hospital. Nothing in the majority opinion or dissent decides anything about outpatient services provided within hospitals.

¶ 69. The Outpatient Clinic is similar in use and function to large multi-specialty doctors' offices that include a walk-in clinic or day surgery center.

¶ 70. A knowledgeable patient would perceive the Outpatient Clinic to be a property used as a doctor's office based on the nature of services provided and manner in which these services are delivered at the Outpatient Clinic. Appointments are generally required. Services are generally offered only during regular business hours. The clinics are not within a hospital, there is no hospital adjacent to the Outpatient Clinic, and the facility is not used to provide inpatient, overnight care.

¶ 71. While not definitive, the Outpatient Clinic property seems to encompass many of the generic features generally attributed to a doctor's office, including examination rooms and private space, although unassigned, for doctors to do paper work and return telephone calls.[6]

¶ 72. Although the Outpatient Clinic may be capable of hospital-like care, the Outpatient Clinic, including the Urgent Care Center, is actually *used* to treat conditions similar to those generally treated in a doctor's office. The Urgent Care Center is marketed as a "24–hour 'quick care' " center for minor injuries and non-life-threatening health problems.

¶ 73. I am not persuaded by the majority opinion because it relies heavily upon facts that are business choices Covenant has made in operating the Outpatient Clinic, rather than on facts relating to "the nature of services provided and manner in which these services are delivered to the patient." The majority fails to connect how certain operational features, such as utilizing the same billing and record keeping system as St. Joseph's Hospital, staffing the Urgent Care Center with

[6] Amicus Curiae Brief and Appendix of the Wisconsin Ass'n of Assessing Officers at 7–10.

emergency medicine physicians, requiring referrals from a physician, providing unassigned work spaces (cubicles rather than assigned individual offices with four walls) for doctors to use for paperwork, providing services under the St. Joseph's hospital license, or qualifying its services for hospital-based reimbursement through Medicare, affect "the nature of services provided and manner in which these services are delivered to the patient."

¶ 74. I agree with the court of appeals that whether the Outpatient Center "qualifies as a hospital or a doctor's office under rules and regulations promulgated outside the [property] tax code is irrelevant to whether the [Outpatient Center] qualifies as a doctor's office for purposes of property tax exemption under Wis. Stat. § 70.11(4m)(a)."[7]

¶ 75. The majority opinion produces at least two unfavorable consequences. First, the majority opinion, by extending the property tax exemption to outpatient facilities owned and operated by not-for-profit hospitals, places at a distinct competitive disadvantage doctors' offices operated by for-profit entities that provide the same services in the same manner.[8] Second, "the more exceptions allowed, the more inequitable becomes the apportionment of the tax burden. The continuous removal of real property from taxation thus imposes a particular hardship upon local government and the citizen taxpayer."[9]

---

[7] Covenant Healthcare System, Inc. v. City of Wauwatosa, 2010 WI App 125, ¶ 20, 329 Wis. 2d 393, 791 N.W.2d 205.

[8] St. Claire Hosp., 209 Wis. 2d at 375–76.

[9] Univ. of Wis. Med. Found., Inc. v. City of Madison, 2003 WI App 204, ¶ 11, 267 Wis. 2d 504, 671 N.W.2d 292 (quoting Int'l Found. of Emp. Benefits Plans, Inc. v. City of Brookfield, 95 Wis. 2d 444, 454, 290 N.W.2d 720 (Ct. App. 1980), aff'd, 100 Wis. 2d 66, 301 N.W.2d 175 (1981)).

¶ 76. I recognize that the result the court of appeals and I reach may also have unfavorable consequences. The amicus briefs of the Wisconsin Hospital Association and the Rural Wisconsin Health Cooperative assert that the decision to tax will have a disproportionate impact on smaller rural hospitals that tend to be more dependent on outpatient revenue than are urban hospitals. They also argue that without a standard test of set factors both hospitals and taxing authorities are left to guess whether any particular facility is subject to property tax.

¶ 77. The court of appeals had the correct response in *St. Clare Hospital,* 209 Wis. 2d at 376: "The question whether to extend the § 70.11(4m)(a), Stats., exemption to outpatient clinics owned and operated by nonprofit hospitals is a public policy question for the legislature, not us, to decide. We are not to extend property tax exemptions by implication."

¶ 78. In light of the changing ways medical services are delivered, it may be time for the legislature to re-examine Wis. Stat. § 70.11(4m)(a). Until the legislature acts on this question of public policy, the presumption is that the property at issue is subject to taxation, that tax exemptions should be strictly construed, and that the burden of persuasion is on the party seeking the property tax exemption.

¶ 79. Because I conclude that Covenant has not met its burden of proving that this property is not "used as a doctor's office," I agree with the decision of the court of appeals that the property at issue is subject to taxation.

¶ 80. For the reasons set forth, I dissent.